Sharon CLAY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 91–CA–001102–MR.

Court of Appeals of Kentucky.

May 21, 1993.

Rehearing Denied July 2, 1993.

Ordered Published Aug. 2, 1993.

Discretionary Review Denied by Supreme Court Jan. 26, 1994.

Larry H. Marshall, Asst. Public Advocate, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Carol C. Ullerich, Asst. Atty. Gen., Frankfort, for appellee.

Before LESTER, C.J., and GARDNER and MILLER, JJ.

GARDNER, Judge:

Sharon Clay (Clay) appeals from a conviction of possession with the intent to traffic in cocaine, possession of drug paraphernalia, and possession of marijuana. We affirm.

On October 12, 1990, police executed a search warrant at Clay's home in Lexington, Kentucky. The search was prompted by undercover drug sales to a confidential informant and various complaints from neighbors. At the time of the search, three adults were present in the house, namely, Clay, her brother Olus Morgan (Morgan), and Bryan Brown (Brown). The search revealed the presence of approximately three ounces of cocaine, a quantity of marijuana, measuring scales and plastic baggies, guns and ammunition, and approximately $11,000.00 in cash. Quantities of cocaine were found in Clay's kitchen and bathroom, and the marijuana was found in Clay's bedroom. After the search concluded, a police officer videotaped the interior and exterior of Clay's home, along with the drugs, cash, and other items which were seized.

■ Clay was charged with possession of cocaine with the intent to sell, possession of marijuana, and possession of drug paraphernalia. The matter went to trial, where Clay admitted that the marijuana belonged to her. She maintained, however, that the cocaine did not belong to her and that she was unaware of its presence in her home. Morgan claimed that the cocaine was his, that it was intended for his personal use and was not for sale, and that Clay knew nothing about it. Clay further maintained that the scales and baggies were not used for the measuring and distribution of cocaine, but rather were used to weigh and store food in conjunction with her diet. The quantity of cash, it was claimed, belonged to her sister, and the guns had been taken out of storage some months earlier to celebrate the 1990 New Year. The matter went before the jury, which found Clay guilty on each charge. She was sentenced to five years in prison, and this appeal followed.

The first issue for consideration is Clay's contention that the trial court erred when it overruled her motion for a directed verdict. We find no error.

The standards for granting a directed verdict at trial and subjecting it to appellate review are set forth in *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991). It provides in relevant part that,

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

At the time Clay moved for a directed verdict, the following evidence had been offered by the Commonwealth in support of the charges against her: approximately three ounces of cocaine were found in Clay's kitchen and bathroom; measuring scales and baggies also were found in the kitchen; over $11,000.00 was found in Clay's purse; a police detective testified that cocaine is generally sold on the street in quantities of one gram or less; handguns and ammunition were found in the home; and Clay possessed unexplained wealth. The trial court had a duty to draw all fair and reasonable inferences from this evidence in favor of the Commonwealth. The sole question now before us as it relates to this issue is whether, under all of the evidence, it would be clearly unreasonable for a jury to find guilt. *Commonwealth v. Benham*, 816 S.W.2d at 187. Having studied the record below and after hearing the arguments of counsel, we cannot conclude that a finding of guilt was clearly unreasonable. The evidence in support of the charges against Clay was sufficient to put the issues of fact before the jury. Accordingly, we find no error in the lower court's denial of the motion for a directed verdict.

■ In a related argument, Clay maintains that a directed verdict also was appropriate because the Commonwealth failed to show that Clay was in possession of the cocaine at the time of the search. Again we find no error. As no cocaine was found on Clay's person, the Commonwealth relied on the theory of constructive possession to connect Clay to the three ounces of cocaine found in her kitchen and bathroom. This connection may be accomplished by establishing that the contraband was subject to the defendant's dominion and control. *Leavell v. Commonwealth*, Ky. 737 S.W.2d 695 (1987); *Rupard v. Commonwealth*, Ky., 475 S.W.2d 473 (1971). It is uncontroverted that Clay owned the house where the cocaine was found, that she lived in the house, and that she used the kitchen and bathroom where the cocaine was stored. Morgan maintained, however, that the cocaine belonged to him and was for his personal use only. The court ultimately concluded that the evidence was sufficient to create a jury issue, and we are sufficiently convinced that pursuant to the

standard set forth in *Benham, supra,* it was not clearly unreasonable for the jury to conclude that Clay constructively possessed the cocaine. Accordingly, the trial court did not err in denying Clay's motion for a directed verdict as it relates to the issue of constructive possession.

Clay next argues that the trial court erred in overruling her motion to exclude the introduction of the cash, credit cards, guns, and videotape. We find no error, and will address each item individually.

■■■ At a pre-trial hearing on Clay's motion in limine, she argued that the approximately $11,000.00 in cash seized during the search should be excluded because it was not found with the cocaine and had no direct relationship to the cocaine. It has been held, however, that a combination of currency, cocaine, and cocaine wrappers is admissible to show that a defendant was involved in a conspiracy to traffic in cocaine. *United States v. Caraza,* 843 F.2d 432 (11th Cir. 1988). Possession of large amounts of unexplained cash tends to prove narcotics activity. *United States v. Gonzalez,* 922 F.2d 1044 (2nd Cir.1991), citing *United States v. Tramunti,* 513 F.2d 1087 (2nd Cir.1975). In *Gonzalez,* the defendant possessed $4,763.00 in unexplained cash, which "tended to demonstrate that he was a major drug dealer...." *United States v. Gonzalez,* 922 F.2d at 1056. In the case at bar, Clay possessed more than twice that amount. While it is clear that possession of a large amount of unexplained cash by itself is not an indicia of criminality, we believe that when taken as part of all of the evidence, its introduction into evidence was proper.

■■■ The purse which contained the cash also contained several credit cards belonging to Clay. She argues that the introduction into evidence of the credit cards was improper because it created an inference that she would not have been able to obtain the cards were she not a drug dealer. Clay does not, however, direct our attention to any pre-trial ruling on the admissibility of these credit cards, and having reviewed the trial record as it relates to this issue, we cannot find that their introduction was inflammatory or otherwise improper. The Commonwealth did not use the credit cards to directly attach culpability to the defendant. Rather, they were used to support the claim that Clay owned the purse which contained the cash. As stated above, connecting Clay to the large amount of unexplained cash tended to bolster the charges against her. We cannot, therefore, find that the trial court erred in admitting into evidence the credit cards.

■■■ The introduction of the guns into evidence is supported by the same principle which allowed for the introduction of the cash. While the possession of properly registered firearms, like the possession of cash, is not by itself an indicia of criminality, it is recognized that weapons are "tools of the trade" in drug trafficking and may be admissible when taken as part of the evidence as a whole. *United States v. Arnott,* 704 F.2d 322, 326 (6th Cir.1983), *cert. denied,* 464 U.S. 948, 104 S.Ct. 364, 78 L.Ed.2d 325 (1983), citing *United States v. Marino,* 658 F.2d 1120 (6th Cir.1981). *See also, United States v. Blakeney,* 942 F.2d 1001 (6th Cir.1991). The admission of weapons under these circumstances is left to the discretion of the trial court. *United States v. Blakeney,* 942 F.2d at 1021. When taken as part of the evidence as a whole, we believe that the weapons were properly admitted below.

The final issue of admissibility regards the introduction of a videotape of Clay's residence made by police after the search had been completed. The videotape shows bags of substances which later were determined to be cocaine and marijuana, the locations in the house where they were found, and also shows the cash, scales, and baggies. The videotape does not show police gaining entry to the house, nor does it show the actual search. It was shown to the jury as part of the Commonwealth's case-in-chief, and at the request of the jury was replayed during their deliberations. The audio portion of the tape was muted to conceal the dialogue of the investigating officers.

■■■ Clay now argues that the videotape should have been excluded because it directs the viewer's attention to the drugs and money, and therefore creates an unfair inference to the jury that they should pay special

attention to these items. Presumably, however, this was the very purpose for which the tape was shown. We have viewed the videotape as well as the manner in which it was introduced at trial, and find no error. The Kentucky Supreme Court has held that videotape evidence does not fall outside the broad category of photographs which are admissible under the liberal approach recognized in *Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980), and continued through *Wager v. Commonwealth*, Ky., 751 S.W.2d 28 (1988). *Milburn v. Commonwealth*, Ky., 788 S.W.2d 253 (1989). *Gall* and its progeny applied the same standard to the admissibility of photographic evidence that has been applied to the admissibility of evidence in general, *i.e.*, whether its probative value outweighs its prejudicial effect. While the probative value of the videotape in question may be limited, it exhibits nothing which could reasonably be construed as being unduly prejudicial. It shows the cocaine and marijuana, the cash, the scales and baggies, and their respective locations in Clay's home. Each of these items, however, was addressed in some detail by way of the testimony of police detectives. The videotape is merely demonstrative evidence supportive of that testimony, tantamount to directly exhibiting the contraband before the jury. Accordingly, we cannot find that the trial court erred in overruling Clay's motion to exclude the videotape.

Clay next sets forth seven instances of alleged prosecutorial misconduct made during the Commonwealth's case-in-chief which she maintains warrant a new trial. We do not agree.

Of the seven instances cited, four were not preserved below and are therefore beyond the scope of our review. *See generally Britt v. Commonwealth*, Ky., 512 S.W.2d 496 (1974) (holding that no objection at trial leaves the appellate court no basis for a finding of error). *See also Elwell v. Stone*, Ky.App., 799 S.W.2d 46 (1990) (holding that error to be considered for appellate review must be precisely preserved and identified in the lower court). Of the three claims of error which were properly preserved, Clay's objections to two of them were sustained, one

objection resulting in the jury being admonished to disregard.

■ The remaining claim of error arose from an exchange between the Commonwealth and Clay. During cross-examination the Commonwealth asked, "Ms. Clay, I can understand your brother not saying when he was arrested that that's his dope. Why didn't you say that's not my dope?" Clay's objection, through counsel, was sustained and the jury was admonished that "[n]o one has an obligation to make any statement at the time of arrest." Clay's subsequent motion for a mistrial was overruled.

■ It is ordinarily presumed that an admonition controls the jury and removes the prejudice which brought about the admonition. *Carpenter v. Commonwealth*, Ky., 256 S.W.2d 509 (1953); *Neeley v. Commonwealth*, Ky., 591 S.W.2d 366 (1979). A mistrial is appropriate only where the record reveals "a manifest necessity for such an action or an urgent or real necessity." *Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672 (1985). We do not believe that either the dialogue in question or the inference to which Clay objected presented the trial court with an urgent or real necessity to declare a mistrial. Clay, we believe, has not overcome the presumption that the admonition cured any resulting prejudice. The trial court plainly stated to the jury that Clay was under no duty to make any statement at the time of arrest. In the absence of evidence to the contrary, we must assume that the admonition achieved the desired effect. A trial court has discretion in deciding whether to declare a mistrial, and its decision should not be disturbed absent an abuse of discretion. *Jones v. Commonwealth*, Ky.App., 662 S.W.2d 483 (1983). We find no abuse of discretion.

Clay also argues that the Commonwealth made improper, prejudicial, and inflammatory comments during closing argument which the trial court improperly failed to remedy. We have examined these comments and the trial court's corrective action, and find no error.

■ Clay offers several statements made by the Commonwealth which she contends

were improper and which denied her due process of law. As these numerous statements were objected to at trial and are sufficiently set forth in the record below, we will not enumerate them herein. At issue, we believe, are whether those statements, taken individually or as a whole, served to prejudice the proceedings against Clay and deny her a fair trial. As a general rule, an appellate court's duty under these circumstances is to determine if the defendant would have been acquitted absent the prosecutor's remarks. *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). In the instant case, Clay's objections to the individual statements generally were sustained, and on at least one occasion the court admonished the jury to disregard. Having carefully reviewed the closing arguments, we believe that the jury's basis for returning a finding of guilt arose not from the prosecutor's comments, but rather from the totality of the evidence against Clay. Accordingly, we find no error.

The final issue for consideration is Clay's contention that the trial court erred in denying her motion for a directed verdict arising out of the Commonwealth's alleged failure to prove possession of drug paraphernalia beyond a reasonable doubt. Again we find no error.

 We direct Clay's attention to our discussion of *Benham, supra,* wherein we set forth the standard for granting or denying a motion for a directed verdict. On appellate review, the test for a directed verdict is whether under the evidence as a whole it clearly would be unreasonable for a jury to find guilt. *Benham,* 816 S.W.2d at 187. In the instant case, the following evidence had been offered in support of the charge of possession of drug paraphernalia: possession of scales which weighed in gram units; testimony that cocaine commonly is sold in grams; baggies found with the scales; testimony that cocaine is commonly packaged in baggies; possession of an infant laxative called Inositol; testimony of a police detective and a chemist that Inositol is commonly used to "cut" or dilute cocaine; and finally, supportive statutory language which defines scales, baggies, and diluting agents, when used in conjunction with controlled substances, as drug paraphernalia. KRS 218A.500(1)(e), (f), and (i). Presented with this evidence in conjunction with the supportive statutory language, we are sufficiently convinced that it would not be clearly unreasonable for a jury to find Clay guilty of possessing drug paraphernalia. Accordingly, the trial court's denial of Clay's motion for a directed verdict was not in error.

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.

All concur.