Steven BRAY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1998–SC–0746–MR.

Supreme Court of Kentucky.

Feb. 21, 2002.

---

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Albert B. Chandler III, Attorney General of Kentucky, Michael G. Wilson, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

LAMBERT, Chief Justice.

Appellant, Steven Bray, was convicted by a Marshall County jury of first-degree arson and two counts of murder. He was sentenced to life in prison and he appeals to this Court as a matter of right.[1]

On November 8, 1982, a mobile home in Marshall County burned to the ground. Found inside were the bodies of Effie York, Appellant's mother-in-law, and Audrey Bray, his wife. Both victims had received gunshot wounds to the head prior to this fire. As part of the police investigation, Appellant was sought for questioning. It was soon learned that Appellant had not been seen since the day of the crimes. Two months later, the Federal Bureau of Investigation, (FBI), became involved and a federal charge was brought against Appellant for unlawful flight to avoid prosecution. Several methods were employed by the FBI to find Appellant, including the Kentucky Eight Most Wanted List and the popular television show "America's Most Wanted." Over a decade later, in 1995, Bray was located in Toronto, Canada, where he was living under a false name, and he was extradited to Kentucky for prosecution.

Appellant was charged with two counts of murder and one count of first-degree

arson by a Marshall County Grand Jury. Following a change of venue, trial was held in Calloway County. Appellant claims several errors occurred at his trial. We discuss each in turn and conclude that Appellant was denied a fair trial and his convictions are reversed.

## I. AFFIDAVIT SUPPORTING RESTRAINING ORDER

Appellant's second claim of error is that an affidavit supporting a motion for a restraining order filed by the victim, Audrey Bray, in conjunction with a divorce petition should not have been admitted because it contained inadmissible hearsay. Appellant also argues that the motion for restraining order and the order itself are inadmissible because they reveal inadmissible prior bad acts.

The motion for restraining order was filed on June 3, 1981, one year and five months prior to the crimes and contained allegations of physical abuse. The affidavit stated, in part, that Appellant had "physically abused [the victim] in the past to the point of requiring medical attention and that she fears such physical abuse or bodily harm if he is not restrained from coming about her or occupying their residence." Appellant offered to stipulate that the motion for the restraining order and petition for divorce were filed, but objected to the contents of the affidavit. The trial court initially ruled that the business records exception to the hearsay rule, KRE 803(6),[2] permitted the admission of the affidavit, and also held it admissible under

---

1. Ky. Const. § 110(2)(b).

2. KRE 803(6) Hearsay exceptions: availability of declarant immaterial.
 The following are not excluded by the hearsay rules, even though the declarant is available as a witness:

 (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if

KRE 804(b)(1)[3] as former testimony.

While neither party has brought it to our attention, we must address *Barnes v. Commonwealth*,[4] a case bearing close similarity to the case at bar. The defendant was on trial for the murder of his wife. Evidence was presented that two and a half years prior to her death, she had filed for divorce and sought a restraining order and executed an affidavit supporting the requested order. The affidavit recited that her husband, the defendant, had physically assaulted and threatened to kill her. Over objection, the trial court admitted the affidavit and upon his conviction, Barnes appealed to this Court. We extensively reviewed the hearsay rule and the purposes underlying its application. We stated that the essence of the rule was the absence of an opportunity to cross-examine out-of-court statements offered for the truth thereof. Concluding that the contents of the affidavit had been improperly admitted, we said:

> In the instant case, appellant was on trial for intentionally causing the death of his wife. It was his right to challenge the evidence presented and cross-examine witnesses against him. This right was denied when the jury was permitted to hear the unchallenged statement made by his wife in a divorce proceeding two and a half years earlier in which she said that appellant 'threatens to shoot Petitioner with his rifle or handgun.' This evidence was offered to prove the truth of the matter asserted, i.e. that appellant had made such a threat, and permitted the jury to infer that the threat had been carried out. At no time was this statement subjected to cross-examination to reveal its possible exaggeration, abridgement of facts, or outright falsehood. Thus, in appellant's trial for murder the jury which determined his guilt was allowed to hear evidence which tended to establish his intent, the most basic element of the crime charged, without any opportunity to test such evidence by cross-examination.[5]

We are unable to meaningfully distinguish between the instant case and *Barnes v. Commonwealth*. In each instance, the affidavit arose out of a divorce case and sought a restraining order; in each instance, the affidavit alleged past acts of physical abuse and fear of bodily harm, and in each instance, there was no opportunity to test the truthfulness of the affidavit by cross-examination.[6] Although

---

kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

3. KRE 804(b)(1) Hearsay exceptions.
The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

4. Ky., 794 S.W.2d 165 (1990).

5. *Id.* at 167–68.

6. In the instant case, the trial court admitted the affidavit pursuant to KRE 803(6), the business records exception to the hearsay rule, and KRE 804(b)(1), a hearsay exception for former testimony. The trial court also expressed the view that as a party to the

*Barnes* is a pre-evidence code case, the adoption of the Kentucky Rules of Evidence did not change the law in this respect.

 The affidavit was inadmissible hearsay. It does not fall within the exceptions given by the trial court for its admission. KRE 803(6) is not applicable because the rule requires that the parties be acting in the normal course of business and that the information in the document is trustworthy. While, the court clerk was acting in the normal course of business by filing the motion and affidavit, the victim was not. Affidavits supporting motions for restraining orders may not be trustworthy, as parties may falsify or exaggerate the circumstances to improve the likelihood that their motion will be granted. Therefore, KRE 803(6) cannot be a basis for admitting the affidavit. Neither does the affidavit fall within KRE 804(b)(1), the hearsay exception for former testimony. The trial court noted that Appellant had been a party to the former action, but the rule requires that the testimony be taken at a hearing or deposition where cross-examination can occur. As there was no hearing or deposition, KRE 804(b)(1) is not applicable.

 The Commonwealth argues that the affidavit fits within KRE 803(8),[7] the public records exception to the hearsay rule. This, too, is unavailing. The affidavit was not made by a public agency pursuant to its lawful responsibility. Although the Circuit Court Clerk was under a duty to file the affidavit, Audrey Bray was the reporting party and she was under no public duty to make such a report. Accordingly, the affidavit alleging physical abuse and fear filed in support of the motion for a restraining order is outside the meaning of KRE 803(8).

Finally, Appellant contends that the affidavit contained inadmissible prior bad acts pursuant to KRE 404(b).[8] However, we need not reach this issue because the affidavit does not fall within any exception to the hearsay rule.

Upon our determination that the victim's hearsay statements set forth in her affidavit for a restraining order fail to meet any exception to the hearsay rule, it is necessary to reverse Appellant's conviction for a

---

divorce action, Appellant would have had an opportunity to contest the facts stated in the affidavit.

7. KRE 803(8) Hearsay exceptions: availability of declarant immaterial.
 The following are not excluded by the hearsay rules, even though the declarant is available as a witness:
 (8) Public records and reports. Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or other data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule:

(A) Investigative reports by police and other law enforcement personnel;
(B) Investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; and
(C) Factual findings offered by the government in criminal cases.

8. KRE 404 Character evidence and evidence of other crimes.
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
 (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

new trial. The Commonwealth has made no serious contention that admission of the affidavit could be regarded as harmless error.

## II. HEARSAY TESTIMONY

■ Appellant's next claim of error is that the testimony of Ernestine Goins, Audrey's sister, contained inadmissible hearsay. Goins' testimony concerned a telephone conversation she had with the victims the night they were killed. Goins stated that the victim Audrey Bray had told her that "[Appellant] was under the house...[he] was below the house, at the foot of the hill, by the mail box and that she [Audrey] could hear him coughing and that he was lighting his cigarettes and had a flash light." Goins further testified that Effie York, her mother, had stated, "Honey, I'm not scared for my life, I've never hurt him or done nothing to him. But I'm scared for Audrey because I'm afraid he's gonna kill her."

■ The present sense impression exception to the hearsay rule, KRE 803(1), describes the exception as "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." Appellant argues that Audrey did not see Appellant and so could not have perceived that it was him. The Commonwealth argues that the present sense impression does not have to be by sight, it could also be by sound, smell or other senses. For present sense impres-

sion, the statement must be made while the declarant is observing the event.[9] Here Audrey stated that "she could hear him coughing and that he was lighting his cigarettes and had a flashlight." This was said while she was observing, through sight and sound, the event, Appellant's presence near her house. The trial court properly admitted the testimony concerning Audrey's statements under the present sense impression exception.

■ At trial, the Commonwealth argued that York's statements were admissible pursuant to the present sense impression exception. Unlike her daughter, Audrey, however, she was not observing an event or condition by her statements. York's statements described her emotional state at the moment of Appellant's approach. Statements of fear may be admissible pursuant to KRE 803(3).[10] However, this hearsay exception offers no refuge for York's statement "I've never hurt or done nothing to him." This is a statement of past fact, not of present condition.

■ The remainder of her statement related to her state of mind and this must fail for failure to satisfy the rules of relevancy.

Where a victim's state of mind is not at issue, the testimony is not allowed to be admitted into evidence. Specifically, where a defendant did not claim self-defense, an accidental death, or suicide, such statements usually have 'little rele-

9. *See Slaven v. Commonwealth*, Ky., 962 S.W.2d 845, 854 (1997).

10. KRE 803. Hearsay exceptions: availability of declarant immaterial.
 The following are not excluded by the hearsay rules, even though the declarant is available as a witness:
 (3) Then existing mental, emotional, or physical condition. A statement of the de-

clarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

vancy except toward providing a strong inference of appellant's intent, actions or culpability.'[11]

York's state of mind was not at issue in the case, nor did Appellant invoke any defense that might make her statements relevant. Upon remand, the entirety of York's statements should not be admitted into evidence.

## III. APPELLANT'S REACTION UPON HEARING OF THE MURDERS

■ Appellant's next claim of error concerns the trial court's refusal to allow the testimony of Candie Bray regarding Appellant's reaction to hearing of the victims' deaths. Candie was permitted to testify that there was a reaction by Appellant but she was not permitted to specify what that reaction was. On avowal, Candie testified that when she told Appellant of the deaths, he "let out a bloodcurdling scream," and said "oh my God, not Audrey." He maintains that his reaction and statement show that he was genuinely shocked upon hearing about the deaths.

Appellant contends that this testimony falls within the excited utterance exception to the hearsay rule. KRE 803(2) defines an excited utterance as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the condition." In *Jarvis v. Commonwealth*,[12] this Court set out eight factors to use for guidance when determining which utterances fall within the rule. These factors are:

(i) lapse of time between the main act and the declaration, (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.[13]

The Commonwealth argues that the testimony is inadmissible under the *Jarvis* factors. It argues that the "event or condition" was the death of Audrey not the statement by Candie of Audrey's death. Therefore, there was a two day time lapse between the "startling event" and the statement by Appellant. Also, the Commonwealth argues that Appellant did not sustain his burden of proving that the testimony falls within a hearsay exception.

Applying the *Jarvis* factors, we hold that the proffered testimony should have been admitted pursuant to KRE 803(2). While there was a two day lapse between the time of the deaths and the time Appellant was told of them, the deaths were not the event to which the rule refers. The event is the statement made by Candie to Appellant that the victims were dead. The event could not be the murders because Appellant is presumed to be innocent and therefore is presumed not to have known of the murders until he heard from Candie.

The trial court is entitled to great deference especially where, as here, the admissibility is debatable. We need not decide whether exclusion of the excited utterance testimony, standing alone, would require reversal or whether its exclusion could be viewed as harmless error. Upon retrial, the evidence should be admitted.

---

11. *Partin v. Commonwealth*, Ky., 918 S.W.2d 219, 222 (1996).

12. Ky., 960 S.W.2d 466 (1998).

13. *Jarvis*, 960 S.W.2d at 470 (quoting *Souder v. Commonwealth*, Ky., 719 S.W.2d 730, 733 (1986)).

## IV. LESSER INCLUDED OFFENSE OF FIRST DEGREE MANSLAUGHTER

 Appellant's next claim of error is that the trial court denied his state and federal due process rights by refusing to instruct the jury on the lesser offense of first-degree manslaughter. Appellant contends that a letter sent to him by his wife two weeks before her death caused extreme emotional disturbance justifying a first degree manslaughter instruction. The letter was introduced through the testimony of James Waddell, who had provided housing for Appellant for several weeks before the crimes occurred. Waddell read part of the letter and testified that "anyone would've been [upset] in this situation." However, there was no evidence presented at trial regarding the details of the letter. Appellant argues that "one can reasonably infer from Waddell's testimony that Audrey's letter informed Bray of either her intent to file a third amended petition for divorce or the fact that she had already instructed her attorney to do so."

The first-degree manslaughter statute, KRS 507.030, requires the presence of extreme emotional disturbance. Appellant produced no such evidence. Waddell stated that "anyone" would have been upset, but there was no evidence that Appellant had a severe emotional response. When the existence of emotional disturbance is speculative, there should be no first-degree manslaughter instruction.[14] Thus, there was no error.

## V. COLLATERAL CRIMINAL CHARGES

### A. "America's Most Wanted"

 Appellant's sixth claim of error is that the trial court improperly denied his motion for a mistrial following various witnesses' testimony about collateral criminal charges. The first such testimony was given by an FBI agent, Sean Walsh. He stated that one of the means of locating Appellant was featuring his case on the television show "America's Most Wanted." Also, Brian Borg of the Toronto Police Department testified that he was provided with pictures that were shown on the television show. Appellant maintains that the jury was hopelessly tainted by this testimony because the television show is famous for helping locate wanted criminals. He argues that the jury selected was free from opinions based on media coverage of the case and that the mentioning of the television show was the very prejudice that the parties were trying to prevent in the first place. Also, that by mentioning the show, it would refresh the memory of jurors who had forgotten about seeing Appellant's case on the show. The Commonwealth argued that the testimony was relevant to what happened after Appellant fled.

 The standard for reviewing the denial of a mistrial is abuse of discretion.[15] "A mistrial is appropriate only where the record reveals 'a manifest necessity for such an action or an urgent or real necessity.'"[16] We hold that there was no abuse of discretion by the trial court because there was no manifest necessity to grant a mistrial. However, although there was no error in the order denying a mistrial, this evidence should not have been admitted. Walsh was testifying about the FBI's attempts to locate Appellant and in doing so

---

14. *Morgan v. Commonwealth*, Ky., 878 S.W.2d 18, 20 (1994).

15. *Clay v. Commonwealth*, Ky.App., 867 S.W.2d 200, 204 (1993).

16. *Id.* at 204 (quoting *Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672 (1985)).

mentioned the name of a popular television show. This was prejudicial and upon retrial, an objection to the testimony about the television show should be sustained. Evidence that Appellant fled to Canada, of course, would be admissible upon retrial.[17]

## B. "Unlawful flight to avoid prosecution" warrant

Appellant also contends that testimony by Walsh that Appellant had been charged with the collateral federal crime of unlawful flight to avoid prosecution was irrelevant and highly inflammatory. The Commonwealth argues this testimony is allowed by *Commonwealth v. Howard* which states that "all facts and circumstances showing the evasion or resistance of arrest, even though they disclose the commission of another crime, are competent upon a trial of the defendant for the first offense."[18] Appellant does not disagree with this case, rather he argues that testimony that he was charged with a crime with respect to flight is different from the "facts and circumstances" permitted by this case.

The criminal charge against Appellant is not a "fact and circumstance" surrounding his fleeing the country. The fact that Appellant had fled the country was revealed at trial by Appellant himself. It was revealed that Appellant had been captured through coordination of United States and Canadian authorities and this evidence was properly admitted. However, evidence that a warrant was issued adds nothing to the proof and is unfairly prejudicial to Appellant. Upon retrial, the Commonwealth may prove that Appellant fled the United States and was captured with the cooperation of Canadian authorities. Evidence that an arrest warrant was issued should be excluded.

## C. Shooting incident with third party

Candie Bray, Appellant's sister, testified on behalf of Appellant. On direct examination, she testified that Appellant was afraid of the York family, that "bad blood" existed between Appellant and the York family, that the Yorks were a large family in Marshall County, and that even Audrey was afraid of members of her own family. Defense counsel then asked her if she was surprised Appellant went to Canada to which she replied she was not.

On cross examination the Commonwealth asked Candie who in the York family Appellant was afraid of. She replied that he was afraid of Mary because she was "out to get him." The Commonwealth responded that it was Appellant who had assaulted Mary and continued to question Candie concerning the events of this assault which involved a "shooting incident" for which Appellant was criminally charged. On redirect, Appellant's counsel asked Candie if she knew that Appellant was only convicted of disorderly conduct and that others present had guns with them. Candie replied no to each of these.

Appellant contends that Candie's statement about Mary did not permit the Commonwealth to advance a line of questioning concerning why Mary was "out to get him." The Commonwealth disagrees arguing that it opened the door to such questioning.

Candie's statement that Mary was "out to get him" did indeed open the door to further questioning regarding the meaning of the statement. Although defense counsel asked several questions regarding the "shooting incident" and the relationship between Appellant and the York family and his fear of them, the questioning al-

---

**17.** *Commonwealth v. Howard,* Ky., 287 S.W.2d 926 (1955).

**18.** *Id.* at 927.

lowed by the trial court did not amount to an abuse of discretion.[19]

## VI. ARSON

### A. Second–Degree Arson instruction

■ Appellant's final claims of error arise from his conviction for first-degree arson.[20] Appellant contends that since the two victims were already dead from gunshot wounds before the home was set on fire, the jury could have believed that the house was not inhabited or occupied by living persons; that it could have found him guilty of second-degree arson [21] and such an instruction should have been given. The Commonwealth contends that the first-degree arson statute is designed to cover the destruction of "dwellings," while the second-degree arson statute is designed to cover other situations such as arson for profit.

■ "An instruction on a lesser-included offense should be given if the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged, but conclude that he is guilty of the lesser-included offense." [22] The evidence in this case would have permitted the jury to conclude that the victims had been killed before the fire was started and the trial court should have instructed the jury as to the lesser-included offense of second-degree arson. It was error for the

trial court to refuse the requested second-degree arson instructions and upon remand, the jury should be instructed on such offense.

### B. Denial of directed verdict on first-degree arson charge

■ Appellant argues that for the reasons stated above, he should have been granted a directed verdict on the first-degree arson charge. Under the evidence as a whole, a directed verdict will not be granted unless it is clearly unreasonable for a jury to find guilt.[23] The evidence was inconclusive as to whether the victims were living or dead at the time the house was set afire. As such, there was no error in the giving of an instruction on first degree arson.

## VII. CONCLUSION

In summary, it is the opinion of the Court that the admission in evidence of Audrey Bray's affidavit for a restraining order amounted to prejudicial error requiring reversal for a new trial. We are also of the opinion that exclusion of Appellant's statements in reaction to learning of the murder of his wife and mother-in-law was also error. Moreover, it was error to admit hearsay statements made by Effie York. And finally, it was error for the trial court to refuse an instruction on second-

**19.** *See Copley v. Commonwealth*, Ky., 854 S.W.2d 748 (1993); *Commonwealth v. Maddox*, Ky., 955 S.W.2d 718 (1997).

**20.** KRS 513.020. Arson in the first degree.
(1) A person is guilty of arson in the first when, with intent to destroy or damage a building, he starts a fire or causes an explosion, and;
(a) The building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied.

**21.** KRS 513.030. Arson in the second degree.
(1) A person is guilty of arson in the second degree when he starts a fire or causes an

explosion with intent to destroy or damage a building:
(a) Of another; or
(b) Of his own or of another, to collect of facilitate the collection of insurance proceeds for such loss.

**22.** *Webb v. Commonwealth*, Ky., 904 S.W.2d 226, 229 (1995) (citing *Luttrell v. Commonwealth*, Ky., 554 S.W.2d 75, 78 (1977)).

**23.** *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991).

degree arson. For these reasons, the judgments of conviction are reversed and this cause remanded for a new trial in conformity herewith.

COOPER, GRAVES, JOHNSTONE, KELLER, and STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in part and dissents in part because the documents were properly admitted as an official public record pursuant to the exception found in KRE 803(8).