# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 15, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0465-MR

HARLAN EDDIE MCINTOSH                                          APPELLANT

V.
ON APPEAL FROM POWELL CIRCUIT COURT
HONORABLE LISA HAYDEN WHISMAN, JUDGE
NO. 20-CR-00101

COMMONWEALTH OF KENTUCKY                                       APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Harlan Eddie McIntosh was convicted following a jury trial of kidnapping in the first degree (minor), rape in the first degree, robbery in the first degree, and of being a persistent felony offender in the first degree (PFO I). While the jury recommended an aggregate sentence of 150 years, the trial court imposed a sentence of seventy years to comply with KRS[1] 532.110. McIntosh now appeals as a matter of right[2] raising four allegations of error. Following a careful review, we affirm.

On July 13, 2020, 16-year-old H.T. and two of her male friends left Cincinnati to travel to Red River Gorge to meet a friend of one of the boys for an overnight campout. The trio arrived between 1:00 a.m. and 2:00 a.m. on July

---

[1] Kentucky Revised Statutes.

[2] Ky. Const. §110(2)(b).

14, and, being unable to locate the appropriate campsite because of the darkness and their unfamiliarity with the area, they decided to sleep in the car. After consuming a quantity of alcohol, the boys sought out an adult to purchase more for them. They observed McIntosh leaning against a truck nearby and engaged him in conversation. McIntosh agreed to buy the kids more beer and got into the rear passenger seat of their car.

During the drive, McIntosh produced a firearm and ordered the driver to pull to the side of the road. He then made the boys get out of the car and lie on the ground, aggressively pointing the gun at H.T. to get them to comply with his commands. McIntosh drove away with H.T. still in the car, telling her he would release her when they returned to the lot where they had first met. After driving for a period of time, McIntosh stopped the car and forcibly raped H.T. on the hood of the vehicle. Afterwards, McIntosh dropped H.T. at a gas station and drove away. H.T. reported the attack to a police officer who happened to be parked across the street. McIntosh fled to Tennessee. The stolen vehicle was located in Gatlinburg, Tennessee, later that same day and McIntosh was found shortly thereafter in Pigeon Forge, Tennessee, carrying a backpack and identification belonging to one of the boys.

A grand jury subsequently indicted McIntosh on charges of kidnapping in the first degree (minor), rape in the first degree, robbery in the first degree, possession of a handgun by a convicted felon, and PFO I. In December 2020, one month after his arraignment, McIntosh was granted leave to act as his own

2

counsel (with hybrid counsel) following a *Faretta*[3] hearing wherein the trial court found him competent to represent himself. At the hearing, McIntosh voiced his desire for a speedy trial. Throughout the pretrial period, McIntosh was keenly focused on expediting the process and objected to any activity which could delay his trial.

The following month, appointed counsel unsuccessfully sought to have McIntosh released on bond to "get him in treatment" to prepare for trial. In March 2021, defense counsel filed an ex parte request for funding to retain a physician to complete an independent psychological evaluation.[4] In late June, McIntosh swallowed razor blades in an unsuccessful suicide attempt. The trial court ordered McIntosh be sent to Kentucky Correctional Psychiatric Center (KCPC) for a competency evaluation. McIntosh objected to the trial court's order, arguing an evaluation would delay his trial which was set for approximately three weeks later. He was adamant he did not want a continuance of any kind. The trial court assured McIntosh the evaluation would be completed expeditiously and would not impact his trial date. KCPC conducted the evaluation and found McIntosh competent to stand trial.

---

[3] *Faretta v. California*, 422 U.S. 806 (1975).

[4] For reasons unclear from the record, no action was taken on the motion until an order was signed on July 14, 2021, granting the requested funds. However, the trial court and defense counsel appear to have proceeded under the assumption the order had, in fact, been signed shortly after the motion seeking funding was filed. Although the order was not signed until close in time to the trial, it does not appear that failure was a hindering factor for the defense as evidenced by defense counsel's affirmative statements that contact was made with a physician around the time the motion was filed, and the sole reason offered for any delay in obtaining an evaluation centered on "scheduling issues."

At a subsequent hearing convened six days prior to trial, defense counsel asserted an independent evaluation and a competency hearing were necessary. Although competency had never been placed in issue, counsel asserted because the trial court had *sua sponte* raised the matter, a competency hearing was mandatory. The trial court was informed a defense expert could not examine McIntosh until the middle of September, which was nearly five weeks after trial was scheduled to begin. Defense counsel indicated discussions had been ongoing with the expert since March 2021, but he had no availabilities in his schedule prior to September. Because the examination could not be completed prior to trial, defense counsel suggested a continuance was necessary as a practical matter, although counsel specifically indicated she was not seeking a continuance. McIntosh vehemently objected to any delay of the impending trial. The trial court concluded no sufficient cause had been shown necessitating a competency evaluation and hearing and denied the defense motion.

Trial began on August 9, 2021, as scheduled. On the fourth day of trial, McIntosh again swallowed razor blades and was transported to the hospital where he refused treatment. Defense counsel sought a mistrial and reiterated the need for a psychological examination. The trial court refused to declare a mistrial and the case resumed the following day.

At the close of the case, as the jury was retiring to deliberate, McIntosh stood up, threw a water bottle toward the panel, and yelled at an unknown juror "When are you going to tell them you know me man? When are you going

4

to tell them you know me?"  Security personnel immediately tackled McIntosh and the jury was ushered out of the courtroom.  Defense counsel's motion for a mistrial was denied, and McIntosh participated in the remainder of the proceedings via video conference.  The jury convicted McIntosh of kidnapping, robbery, rape and being a PFO I, and recommended an aggregate sentence of 150 years' imprisonment.  The trial court reduced the sentence to the statutory maximum of 70 years in compliance with KRS 532.110(c).  This appeal followed.

McIntosh raises several allegations of error in seeking reversal.  First, he asserts the trial court erred in refusing to grant a continuance to hold a competency hearing and permit him time to obtain an independent psychological evaluation.  Second, he contends he was entitled to a mistrial after he yelled at and threw a water bottle toward the jury.  Third, McIntosh argues the trial court erred in failing to exclude H.T.'s pretrial identification of him.  Next, he claims the trial court erroneously permitted the Commonwealth to present rebuttal evidence that was more prejudicial than probative.  Finally, McIntosh alleges cumulative error.  For the reasons that follow, and discerning no reversible error, we affirm.

McIntosh first contends the trial court erred in not granting his request for a continuance to have an independent psychological examination completed and a competency hearing convened.  He argues the trial court's failure resulted in identifiable prejudice as he was unable to pursue any mental health defense or mitigation.

5

Our review of the record reveals McIntosh never requested the continuance he now alleges was erroneously denied. In fact, quite the opposite is true. A competency hearing was first requested less than one week prior to trial but counsel made clear no request for a continuance was being made. McIntosh voiced his desire that trial move forward as scheduled and opposed any continuance. Defense counsel indicated their expert would be unable to evaluate McIntosh in the short time remaining before trial. Although several months had passed since requesting expert funding, apart from indicating the preferred psychologist had not had any availability, no explanation was proffered as to what efforts had been made to obtain the requested evaluation or procure another expert who had scheduling availability. McIntosh reiterated his opposition to delaying trial. The Commonwealth likewise opposed a continuance.

The trial court stated McIntosh had made clear he did not desire a continuance and confirmed with defense counsel no continuance was being requested. It further noted competency had never before been raised, KCPC had found McIntosh competent, and, citing *Padgett v. Commonwealth*, 312 S.W.3d 336, 348 (Ky. 2010), because no substantial evidence of incompetency had been presented, a competency hearing was unwarranted. The trial court then denied the only motion pending before it—a request for a competency hearing.

This Court finds McIntosh's present challenge was not preserved. He has requested review for palpable error under RCr[5] 10.26. However, a review for palpable error is not appropriate because McIntosh waived his claim to raise this issue as error. Not only did the trial court not deny a requested continuance, both McIntosh and his counsel affirmatively stated no such relief was being requested.

As this Court stated in *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011), "[t]hese alleged errors, therefore, were not merely unpreserved, they were invited." We further noted other courts had distinguished "forfeited errors, which are subject to [palpable] error review, and waived errors, which are not . . . [and] ha[ve] held that invited errors that amount to a waiver, *i.e.,* invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review." *Id.* at 38 (citing *United States v. Perez*, 116 F.3d 840 (9th Cir. 1997)). The rationale behind this rule is to prevent a defendant from committing an act and later complaining on appeal the trial court erred to his detriment. *See Gray v. Commonwealth*, 203 S.W.3d 679, 686 (Ky. 2006). Simply stated, "[a] defendant cannot complain on appeal of alleged errors invited or induced by himself[.]" *Id.* (quoting *United States v. Lewis*, 524 F.2d. 991, 992 (5th Cir. 1975)). "Generally, a party is estopped from asserting an invited error on appeal." *Quisenberry*, 336 S.W.3d at 37 (citing *Gray*, 203 S.W.3d at 686). Otherwise, a party would be permitted "to take advantage of

---

[5] Kentucky Rules of Criminal Procedure.

7

an error produced by his own act." *Wright v. Jackson*, 329 S.W.2d 560 (Ky. 1959); *United States v. Myers*, 854 F.3d 341, 355 (6th Cir. 2017) ("Challenges to such invited errors are forfeited."). Because McIntosh specifically asked that no continuance be allowed and asserted multiple times that he wished for his trial to be held as scheduled without further delay, he waived his right to claim on appeal that he was entitled to a continuance.

Even were we to consider the merits of McIntosh's claim, we discern no error. As the trial court correctly noted, no substantial evidence of a lack of competency was ever presented and the defense did not raise the issue until the eve of trial and only after KCPC had issued a report finding McIntosh was competent. Based on the utter lack of evidence of incompetency, the trial court correctly determined no competency evaluation and hearing were required. *See Padgett*, 312 S.W.3d at 347. Further, McIntosh was not deprived of the opportunity to obtain an independent psychological evaluation. Funds were requested to obtain such an examination, yet months passed without apparent action. No indication was given of why a different doctor could not have been procured in the months leading up to trial, especially when McIntosh had made it very clear that he did not wish to delay his trial for any reason. If competency was, in fact, going to be placed in issue, steps could have been taken to obtain an independent evaluation sufficiently ahead of the scheduled trial so that his competency could be fully and fairly explored McIntosh was granted sufficient opportunity to pursue a mental health defense or mitigation

8

but failed to do so.  Any alleged error cannot be laid at the feet of the trial court for McIntosh's own failure to act in a timely fashion.

Second, McIntosh argues the trial court should have granted a mistrial after he threw a water bottle toward jurors and yelled at an unidentified juror accusing him of hiding the fact of knowing McIntosh.  He contends the outburst created the manifest necessity of granting a mistrial because the jury had been placed in such fear it could therefore not remain unbiased, resulting in an unfair trial.

"It is well established that the decision to grant a mistrial is within the trial court's discretion, and such a ruling will not be disturbed absent a showing of an abuse of that discretion."  *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004) (citing *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002)).  Additionally, "a mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings and there is a 'manifest necessity for such an action.'"  *Id.* (quoting *Bray*, 68 S.W.3d at 383).  The cause of the need for mistrial "must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way."  *Id.* (quoting *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996)).

"[W]here a defendant's own intentional conduct creates the basis for the allegations of error, we have long recognized an exception to general rules for reasons that '[a] court must guard against allowing a defendant to profit from his own wrong in this way.'"  *Meece v. Commonwealth*, 348 S.W.3d 627, 711

9

(Ky. 2011) (quoting *Illinois v. Allen*, 397 U.S. 337, 345 (1970)). "[I]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." *Id.* (quoting *Allen*, 397 U.S. at 343). "This reflects the interest of society in an orderly judicial process and is necessary to prevent the paralysis of criminal proceedings and turning them into a farce." *Scott v. Commonwealth*, 616 S.W.2d 39, 43 (Ky. 1981).

Here, McIntosh had acted appropriately before the jury throughout the multi-day trial and had actively assisted with his own defense. It was not until the jury was retiring to decide his fate that McIntosh engaged in any misconduct. He now attempts to blame his "spiraling mental health" for the outburst and claims his actions irretrievably biased the jury against him.

> Were such the rule, then, of course, a defendant could control the course of a trial by intentionally creating disturbances that caused juror excusals, necessitated continuances, and terminated trials, at their discretion, by mistrial. Such a rule would give to a defendant the right to *control* the trial, rather than the right to a *fair* trial. Thus, such a rule would not further the interests of society in an orderly judicial process—a process that is necessary to ensure that each and every person receives a constitutionally mandated fair trial.

*Meece*, 348 S.W.3d at 711-12. We discern no abuse of discretion in the trial court's refusal to grant a mistrial based on McIntosh's own voluntary bad behavior.

10

Next, McIntosh argues the trial court erred in denying his pretrial motion to suppress H.T.'s in-court[6] and out-of-court identification of him as the perpetrator. He avers the actions of Kentucky State Police Detective Justin Flannery surrounding H.T.'s out-of-court identification were unduly suggestive and deprived him of due process. We disagree.

During a suppression hearing, the following facts were elicited. On the day of the attack, Detective Flannery interviewed H.T. at the Kentucky River Medical Center. During the interview, H.T. described her attacker and the firearm he had used. Hearing these descriptions, Detective Flannery recalled a robbery which had occurred a few days earlier and believed the same person may have committed both crimes. McIntosh was already a suspect in the robbery so Detective Flannery stepped out of H.T.'s room to request a photo lineup be prepared which included McIntosh. Knowing the lineup would take some time to assemble, Detective Flannery proceeded with the interview but did not indicate to H.T. that he had a suspect in mind.

As he neared the end of the interview, Detective Flannery turned his back to H.T. and accessed McIntosh's Facebook profile from his mobile phone. He indicated his intent was to determine if McIntosh had any distinguishing characteristics about which he could question H.T. While he was looking at a photograph of McIntosh on his phone, H.T. leaned up from the hospital bed and said, "That's him." Upon further questioning by another detective present

---

[6] McIntosh makes no argument regarding H.T.'s in-court identification of him as being erroneous. Thus, further discussion of that issue is unwarranted.

11

in the room, H.T. confirmed she was certain of her identification. Approximately 10 to 15 minutes later, Detective Flannery received the photo lineup and H.T. picked out McIntosh as her rapist.

Following the suppression hearing, both parties briefed the issues. In a detailed, eleven-page order denying McIntosh's motion, the trial court utilized the two-part test set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), to determine whether H.T.'s identification of McIntosh was sufficiently infirm to violate McIntosh's due process rights. First, the trial court concluded H.T.'s "seeing" of McIntosh's photograph was unduly suggestive based on the circumstances. Next, the trial court looked to the totality of the circumstances to determine whether the identification was reliable in spite of the suggestive identification procedure. In so doing, the trial court again looked to *Neil* for guidance.

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* at 199-200.[7] After discussing each factor, the trial court determined there was no substantial likelihood of a misidentification and the weight of the factors was sufficient to overcome any suggestiveness in H.T.'s original identification of McIntosh from the Facebook photo. Thus, suppression was denied.

---

[7] Although not mentioned by the trial court, we adopted the *Neil* test in *Savage v. Commonwealth*, 920 S.W.2d 512, 513 (Ky. 1995).

McIntosh disagrees with the trial court's assessment and urges us to overturn his conviction based on what he believes was an impermissibly suggestive procedure which resulted in an unreliable identification. We decline to do so.

When reviewing the denial of a motion to suppress, a clearly erroneous standard applies to a trial court's factual findings and they will be deemed conclusive if supported by substantial evidence. *Davis v. Commonwealth*, 484 S.W.3d 288, 290 (Ky. 2016).

We review a trial court's ruling on a motion to suppress an out-of-court identification for an abuse of discretion as we do a ruling regarding the admissibility of any evidence. *King v. Commonwealth*, 142 S.W.3d 645, 649 (Ky. 2004). An abuse of discretion occurs when the trial court's "decision [is] arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941 (Ky. 1999).

When a defendant questions the validity of an out-of-court identification, the trial court must first determine if that identification was unduly or impermissibly suggestive. *Grady v. Commonwealth*, 325 S.W.3d 333, 353 (Ky. 2010). If it was not, then the analysis stops. *Id.* However, if the trial court determines the procedure was infirm, as did the court below, it must then turn to the second prong of the *Neil* test to determine whether an independent basis of support exists for the identification. We agree with the trial court that the five *Neil* factors were met.

13

The first *Neil* factor in the "totality of the circumstances" test is the opportunity to view. H.T spent a considerable amount of time with her assailant, as she was with McIntosh for over two hours, interacting with him at the parking lot, in the vehicle, and outside the vehicle during the rape. Although McIntosh argues it was too dark for H.T. to see her attacker and H.T. remarked she closed her eyes during the encounter, it is clear she had ample opportunity to observe him in the course of her ordeal. Nothing in the record indicates McIntosh tried to conceal his identity or that his features were not observable. The second factor is the witness's degree of attention. As the trial court noted, during the rape, H.T. would not have been a "casual observer, but rather the victim of one of the most personally humiliating of all crimes." *Neil*, 409 U.S. at 200. McIntosh's bald assertion the stress and trauma of a rape impairs the victim's attention is without merit. The third factor is the accuracy of prior descriptions. Before viewing McIntosh's Facebook photo, H.T. gave a detailed description of her attacker including hair color and length, approximate height and weight, approximate age, location and amount of facial hair, and skin tone. Although some of her descriptions were not entirely accurate and she failed to mention any of McIntosh's tattoos, the overall description was a close match for McIntosh and any discrepancies were subject to impeachment on cross-examination. The fourth factor is the level of certainty at confrontation. H.T. never wavered in her identification. Upon seeing the Facebook photo, she immediately and unequivocally said, "That's him" and responded "Yes" when asked if she was positive. The fifth factor is

14

time between the crime and the confrontation. The time period between the rape and the identification was a matter of a few hours.

Analyzing the *Neil* factors, the totality of the circumstances indicate H.T.'s identification was reliable, and there was no substantial likelihood of misidentification, in spite of the suggestive nature of H.T.'s viewing of the Facebook photograph. McIntosh's due process rights were not violated. The trial court did not abuse its discretion in permitting the out-of-court identification to be presented to the jury.

For his fourth allegation of reversible error, McIntosh avers the trial court erred in permitting the Commonwealth to introduce rebuttal evidence which was more prejudicial than probative. Prior to trial, the Commonwealth provided notice of its intent to introduce evidence of McIntosh's alleged involvement in an uncharged armed robbery which occurred less than two days before the events at issue in this case. The trial court granted McIntosh's motion to exclude the evidence as the robbery was unrelated to the crimes charged. However, during his testimony, McIntosh stated he did not pull a gun on the victims and that he had found the pistol in a backpack after he stole their vehicle.

The Commonwealth moved to provide rebuttal evidence from Detective Flannery that McIntosh had possessed the handgun during the armed robbery two days prior to stealing the vehicle. The trial court concluded McIntosh had opened the door to the rebuttal but excluded any reference to an alleged robbery as being more prejudicial than probative. It permitted the

15

Commonwealth to elicit testimony only that on a particular date, after viewing a particular video, a person appearing to be McIntosh was in possession of what appeared to be the same gun used in the instant crimes.

Detective Flannery testified he believed McIntosh possessed the gun on July 12, 2020, based on his knowledge and review of camera footage. In a follow-up question, the Commonwealth asked Detective Flannery if McIntosh pulled a gun in the video. Defense counsel immediately objected and requested a mistrial. The trial court concluded the question went beyond its ruling but declined to order a mistrial. No admonition was requested. Detective Flannery was subsequently permitted to confirm McIntosh had a gun in the video footage.

McIntosh now claims the trial court erred when it failed to use neutral language to describe the video footage, instead using the prejudicial and loaded term "surveillance camera" which was subsequently copied by the Commonwealth, and further erred in failing to take action to correct the Commonwealth's statement McIntosh "pulled a gun" in the "surveillance video." He asserts he was unduly prejudiced by these errors and reversal is required. Again, we disagree.

Trial courts are granted broad discretion in determining the admissibility of rebuttal evidence and we review for an abuse of that discretion. *Peters v. Commonwealth*, 345 S.W.3d 838, 844 (Ky. 2011). "Rebuttal evidence is evidence that 'tends to counteract or overcome the legal effect of the evidence for the other side.'" *Fraser v. Miller*, 427 S.W.3d 182, 184-85 (Ky. 2014)

16

(quoting *Reserve Loan Life Ins. Co. v. Boreing*, 157 Ky. 730, 163 S.W. 1085, 1087 (1914)).

McIntosh concedes he opened the door for rebuttal testimony to counter his direct testimony claiming he had not possessed a gun prior to his interactions with H.T. and her friends. Thus, McIntosh does not argue the trial court erred in permitting the rebuttal. Rather, he posits the Commonwealth exceeded the parameters laid down in the trial court's ruling allowing the rebuttal testimony, thus entitling him to relief.

As previously stated, whether to grant the extreme remedy of a mistrial is within the trial court's discretion, and we will not disturb such rulings absent an abuse of that discretion. *Woodard*, 147 S.W.3d at 68. "[T]he trial court, in its discretion, may choose to admonish the jury instead of granting a mistrial; this is so because an admonition is presumed to cure a defect in testimony." *Major v. Commonwealth*, 275 S.W.3d 706, 716 (Ky. 2009). No request for an admonition was put to the trial court and the failure to do so is generally regarded as trial strategy. *Ernst v. Commonwealth*, 160 S.W.3d 744, 759 (Ky. 2005).

The trial court did not abuse its discretion in refusing to grant a mistrial as that was not the appropriate remedy under the circumstances. Instead, the appropriate remedy, had it been requested, would have been an admonishment to the jury. Breaches of KRE[8] 404(b)'s rule against the admission of prior bad

---

[8] Kentucky Rules of Evidence.

acts as character evidence are generally subject to admonitory cures. *Boyd v. Commonwealth*, 439 S.W.3d 126, 132 (Ky. 2014). The sole reasoning behind McIntosh's request for a mistrial was the Commonwealth's question posed to Detective Flannery of whether McIntosh "pulled a gun," which he asserts was a thinly veiled reference to the robbery. Although the Commonwealth's question arguably impermissibly contravened the parameters of the trial court's ruling, it was not inflammatory or highly prejudicial, nor did the question lack a factual basis. Since McIntosh did not request an admonition to the jury, "the failure to give the admonition and the conduct complained of are not considered prejudicial. The court properly refused to discharge the jury." *Coulthard v. Commonwealth*, 230 S.W.3d 572, 578 (Ky. 2007) (quoting *Jackson v. Commonwealth*, 275 S.W.2d 788, 789 (Ky. 1955)).

Finally, McIntosh claims his convictions should be reversed due to cumulative error. Under the cumulative error doctrine, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Cumulative error has been found "only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Id.* (citation omitted). Here, as we have found no individual errors, there can be no cumulative error.

For the foregoing reasons, the judgment of the Powell Circuit Court is affirmed.

All sitting. All concur.

18

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Jennifer Wade
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General