Samantha MAYSE, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2012–SC–000015–MR.

Supreme Court of Kentucky.

Oct. 24, 2013.

As Modified on Denial of Rehearing
March 20, 2014.

Ryan James Reed, Law Office of Ryan J. Reed, PLLC, for appellant.

Jack Conway, Attorney General, Christian Kenneth Ray Miller, Assistant Attorney General, for appellee.

Opinion of the Court by Justice CUNNINGHAM.

In January of 2009, Appellant, Samantha Mayse, used a single's telephone chat line to lure Shawn Davis to a residence under the guise of a sexual encounter. What unfolded, however, was far from an erotic rendezvous. Mayse, along with Mary Hartbarger and Marion "Timmy" Parker, intended to rob Davis. The illicit scheme came to fruition when Davis arrived at the apartment and Mayse and her confederates attacked Davis in the upstairs bed-room. A fierce melee ensued. Fearing for his life and naked, Davis unsuccessfully attempted to jump out of a window to escape his aggressors. There was evidence that Mayse helped to restrain Davis and that she also struck him. Patrick Cooke then entered the scene and held Davis down while Parker beat him. Parker took a porcelain toilet tank lid that had been hidden in the closet and beat Davis in the head with such severity that the lid shattered. Offering no reprieve, Parker then bound Davis's hands with cable and strangled him to death. Sometime during the assault, Parker removed twenty dollars from Davis's wallet.

After wrapping Davis's body in a plastic shower curtain, Cooke and Parker carried the body outside and placed it in a large trash can which they then positioned into the bed of the victim's truck. Hartbarger held the hallway door open so that the children who were also living in the apartment would not witness the grizzly deed. Parker, Cooke, and Hartbarger then drove to an isolated location in a neighboring county. There, underneath a bridge and surrounded by winter's frigid embrace, Parker set fire to the victim's body.

Mayse was charged with one count of complicity to murder and one count of first-degree complicity to robbery. A Kenton Circuit Court jury found Mayse guilty on both counts and recommended a sentence of life without the possibility of parole for a minimum of twenty-five years on the murder count and twenty years on the robbery count. The two sentences were recommended to run concurrently. On December 7, 2011, Mayse was sentenced in accordance with the jury's recommendation.

Mayse now appeals her conviction and sentence as a matter of right pursuant to the Ky. Constitution § 110(2)(b). Several issues are raised and addressed as follows.

### The Use of Guilty Pleas as Substantive Evidence

Mayse argues that the trial court erred by denying her motions for mistrial after the Commonwealth repeatedly referenced two of the three co-indictees' guilty pleas in the presence of the jury. Mayse presented multiple motions for mistrial based upon this premise and each will be discussed individually. The trial court's denial of a motion for mistrial is reviewed for abuse of discretion. *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky.2002).

### First Mistrial Motion

The Commonwealth's Attorney began to question the jury during voir dire by stating: "At least two people in this case ... that I anticipate will testify have pled guilty to...." Mayse's counsel immediately objected, thereby abruptly cutting off the Commonwealth's Attorney before he could complete his sentence. Mayse then moved for a mistrial, arguing that the Commonwealth was attempting to prejudice her by bolstering the credibility of the anticipated witnesses. The Commonwealth's Attorney responded that he had not yet posed the question, but in any event, the purpose was to determine whether any of the potential jurors would be prejudiced against such testimony. The trial court reserved ruling on the motion until it had completed more research. The Commonwealth then proceeded with this line of questioning, while specifically omitting the mention of the terms "plea" or "pled" when referring to the anticipated future testimony of Mayse's co-indictees.

Upon conclusion of voir dire, the parties again argued the issue, resulting in an oral ruling by the trial court denying the motion. The court acknowledged precedent barring the Commonwealth from using the co-defendants' guilty pleas for improper purposes in its case-in-chief, noting that the disputed statement at issue here occurred during voir dire. The court then concluded that the Commonwealth was merely attempting to detect bias from the jury. We agree.

For all her mistrial motions, Mayse asserts error predicated primarily upon the well-established rule in *Parido v. Commonwealth*, 547 S.W.2d 125 (Ky.1977) and *Tipton v. Commonwealth*, 640 S.W.2d 818 (Ky.1982). "It has long been the rule in this Commonwealth that it is improper to show that a co-indictee has already been convicted under the indictment." *Parido*, 547 S.W.2d at 127 (citing *Martin v. Commonwealth*, 477 S.W.2d 506 (Ky.1972)).

However, *Tipton* bars only the "[*blatant* ] use [of] the conviction [of a co-indictee] as substantive evidence of guilt of the indictee now on trial[.]" *Tipton*, 640 S.W.2d at 820 (emphasis added). We fail to see the blatant intent behind the Commonwealth's incomplete statement to the venire panel.

Moreover, a statement posed during voir dire is not substantive evidence. Secondly, it is quite routine practice for the Commonwealth to question prospective jurors about whether previous charges or convictions of its witnesses and/or deals made with them by the Commonwealth will prohibit the jurors from giving such witnesses a fair hearing. *Ward v. Commonwealth*, 695 S.W.2d 404, 408 (Ky.1985).

Mayse relies heavily on *Linder v. Commonwealth*, 714 S.W.2d 154 (Ky.1986). In a very brief opinion, our predecessor Court found reversible error when, at trial, the jury was informed during opening statements that a co-defendant had entered a guilty plea. *Id.* We find the holding in *Linder* to be extremely narrow and unpersuasive as evidenced by the absence of any significant citation to this case in the decades following its rendition. The weight of the case law instead favors the Commonwealth. *See, e.g., Tipton*, 640 S.W.2d at 818. Thus, the trial court did not abuse its

discretion when denying Mayse's first mistrial motion.

### Second Mistrial Motion

■ The Commonwealth called Patrick Cooke to testify in its case-in-chief. Cooke was indicted under the same charges as Mayse, along with an additional charge of tampering with evidence. He had previously entered into a plea agreement with the Commonwealth requiring him to testify truthfully at Mayse's trial. Mayse raises no issue with the Commonwealth's direct examination of Cooke because the Commonwealth never used the term "plea." On cross-examination, however, Mayse's attorney questioned Cooke about the "agreement" he had with the Commonwealth in which his penalty for murder would be reduced to five years if he testified truthfully. On re-direct, the Commonwealth elicited Cooke's clarification that his agreement with the Commonwealth also included a charge of first-degree robbery, for which he received an additional penalty of fifteen years. The Commonwealth's Attorney specifically asked, "Was there another charge you pled guilty to?" Cooke replied in the affirmative. Mayse then objected and again moved for a mistrial. The trial court again denied the motion, determining that Mayse opened the door for discussion of the plea agreement. We agree.

In *Commonwealth v. Gaines*, we affirmed the authority of the Commonwealth to cross-examine a witness concerning a guilty plea where the issue was first raised by the defense. 13 S.W.3d 923, 924–25 (Ky.2000). In the case at bar, the Commonwealth did not seek to elicit information about the guilty plea upon direct examination. Rather, it is clear from the context of the cross-examination that the defense was attempting to impeach Cooke's credibility by questioning the terms of his "agreement" with the Com-

monwealth. *Meece v. Commonwealth*, 348 S.W.3d 627, 690 (Ky.2011).

Mayse argues that *Gaines* is inapplicable here because it was, in fact, the Commonwealth that first informed the jury of the co-indictees' liability during voir dire. As previously noted, we find no error in this inquiry during voir dire and would have to greatly expand our interpretation of the *Parido–Tipton* line of cases to find that reversible error occurred prior to trial.

In addition, the trial court sua sponte admonished the jury not to consider Cooke's agreement with the Commonwealth as to any charges against Mayse. Thus, the trial court did not abuse its discretion by denying Mayse's second motion for mistrial.

### Third Mistrial Motion

Mayse moved for a third mistrial during the Commonwealth's closing argument. The record reflects that the Commonwealth continued to refer to the terms of the agreements with Cooke and Hartbarger and specifically stated that they "pled to facilitation of murder." The trial court sustained Mayse's objection and any further commentary, but denied the mistrial motion.

■ It is well-settled that opening and closing arguments are not evidence and prosecutors are given considerable leeway during both. *Stopher v. Commonwealth*, 57 S.W.3d 787, 805–06 (Ky.2001); *Slaughter v. Commonwealth*, 744 S.W.2d 407, 411–12 (Ky.1987). These final statements were also not a blatant use of a co-indictee's conviction as substantive evidence of Mayse's guilt. *Tipton*, 640 S.W.2d at 820. It should be noted that our decision here is not an invitation for prosecutors to liberally discuss a co-indictee's conviction with the jury for any purpose

other than credibility or lack of credibility of that witness.

Finally, the motion for mistrial was renewed at the close of all proof. For the reasons stated above, we find that the trial court did not abuse its discretion in denying the mistrial motion.

### Jail Letters

■ Mayse contends that the trial court erred by admitting Commonwealth's Exhibit # 23—eighteen jail letters written between Mayse and Parker—as relevant evidence. A trial judge's decision with respect to relevancy of evidence is reviewed for abuse of discretion. *Love v. Commonwealth*, 55 S.W.3d 816, 822 (Ky.2001).

All eighteen letters were written by Mayse and addressed to Parker after both were incarcerated and awaiting trial. The letters were removed from Parker's jail cell and presented as evidence at trial after the trial judge held that the letters were relevant in determining the status of Mayse's and Parker's relationship as co-conspirators.

■ KRE 401 and 402 provide a well-established minimal relevancy standard. Here, the content of the letters demonstrates an intimate, friendly, and even romantic relationship between Mayse and Parker. They were offered to rebut Mayse's claim that she barely knew Parker, that Parker had "mental problems," and that she felt threatened by Parker. Accordingly, the trial court was well within its discretion in admitting the letters as relevant evidence demonstrating the likelihood of a co-conspirator relationship between. Mayse and Parker.

■ Furthermore, the probative value of the letters was not substantially outweighed by the danger of undue prejudice against Mayse. KRE 403. Mayse was convicted on both counts under a complicity theory. Therefore, any evidence demonstrating the nature of her relationship with Parker, or lack thereof, offers critical probative value. *Murray v. Commonwealth*, 399 S.W.3d 398, 409 (Ky. 2013) (probative value of evidence suggesting a homosexual relationship between defendant and co-defendant substantially outweighed danger of unfair prejudice to defendant charged under a complicity theory); *cf. McIntire v. Commonwealth*, 192 S.W.3d 690, 698 (Ky. 2006). In fact, all evidence demonstrating that a defendant is guilty beyond a reasonable doubt prejudices the defendant. KRE 403 requires something more. Mayse fails to demonstrate that, in this case, the probative value of the letters was *substantially* outweighed by the danger of *undue* prejudice. KRE 403 (emphasis added). For the reasons stated above, the trial court did not abuse its discretion in admitting the letters as evidence.

### Sixth Amendment Right to Present a Defense

■ Mayse contends that she was denied her Sixth Amendment right to present a defense when Parker invoked his Fifth Amendment right not to testify. This argument is unpreserved and will be reviewed for palpable error. RCr 10.26; *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky.2006).

■ Parker's plea agreement with the Commonwealth did not require him to testify at Mayse's trial. When defense counsel learned that Parker intended to assert his Fifth Amendment right against self-incrimination and not testify, Mayse argued that Parker waived his right by entering into a plea agreement. with the Commonwealth. The parties met outside the presence of the jury to determine the issue of waiver. The trial court relied upon *Mitchell v. United States* in holding that Parker had not waived his Fifth

Amendment right. 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). In that ease, the U.S. Supreme Court held that a guilty plea did not constitute a waiver to remain silent until the person had been sentenced. Parker had not yet been sentenced at the time of the trial of this matter. Therefore, the trial court correctly applied *Mitchell* and there was no error in the court's ruling.

### *Jury's Review of Inadmissible Evidence*

■ Mayse further asserts that the trial court erred by denying her motion for a mistrial after the jury briefly accessed inadmissible evidence during deliberations. We review this alleged error for an abuse of discretion. *Bray v. Commonwealth,* 68 S.W.3d 375, 383 (Ky.2002).

Unfortunately, two proffered defense exhibits not properly admitted as jury exhibits were inadvertently placed with the evidence to be reviewed by the jury during deliberations. Specifically, proffered Defense Exhibit # 3 (Transcript of Parker's Confession) and proffered Defense Exhibit # 4 (Parker's Plea Agreement) were given to the jury, who then briefly reviewed and discussed Exhibit # 3 only. Realizing that Exhibit # 3 and the information contained therein had not been presented at trial, the jurors requested instructions from the trial judge in order to determine whether they were to consider the exhibit. The judge assembled the jury and counsel in the courtroom, questioned the jury about the extent to which they had viewed and discussed both proffered exhibits, and then strongly admonished the jury to disregard both. Prior to the admonition, Mayse moved for a mistrial.

■ It is undisputed that delivery of proffered Defense Exhibits # 3 and # 4 to the jury was improper. RCr 9.72; *see, e.g., Burkhart v. Commonwealth,* 125 S.W.3d 848, 850 (Ky.2003); *Chestnut v. Commonwealth,* 250 S.W.3d 288, 302–03

(Ky.2008). However, the trial court's denial of Mayse's mistrial motion was not an abuse of discretion. *Bennett v. Commonwealth,* 217 S.W.3d 871, 875 (Ky.App.2006) ("A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity.").

■ The record reflects that Defense Exhibit # 4 (Parker's Plea Agreement) was never reviewed by the jury. Further, the amount of time the jury had access to the exhibits was brief. *See St. Clair v. Commonwealth,* 140 S.W.3d 510, 558 (Ky. 2004). In fact, the record reflects that only one juror actually reviewed Exhibit # 3. Considering that the disputed exhibit totals 173 typed pages, we believe the juror's review was merely cursory. There is no evidence that the improperly admitted exhibits affected the jury's deliberations. *See id.*

The trial court's decision is further reinforced because the exhibits inadvertently given to the jury were defense exhibits. There is obvious irony in Mayse's argument now on appeal. Exhibit # 3 contained the very information that Mayse was attempting to get to the jury through the live testimony of Parker. When the trial court made the right decision in allowing Parker to opt out as a witness, Mayse submitted for us to consider all the exculpatory matters in the confession to which Parker would have testified. Mayse asserted to the trial court, and even to this Court, on another issue all of the exculpatory content of Parker's confession by citing numerous segments from the confession in support of an accompanying argument. Mayse now argues that for the jury to have seen this evidence, even though in a cursory glance, is reversible error. Mayse cannot have it both ways. Mayse argued at trial that proffered De-

fense Exhibit # 3 contained exculpatory evidence that should have been presented to the jury. On appeal, although the duality of Parker's entire confession may appear problematic at first blush, it would be misleading and contradictory not to acknowledge that Mayse actually wanted much of Parker's confession to be heard by the jury.

Lastly, the Commonwealth presented an abundance of additional evidence inculpating Mayse. Most significant was the testimony of her co-conspirators, Hartbarger and Cooke, both of whom described Mayse's central role in the robbery and murder. There is no evidence that the jury's decision was affected by the mistake and there was ample evidence upon which the jury could have reasonably relied to convict Mayse. Therefore, we are convinced that the trial court did not abuse its discretion in denying Mayse's motion for mistrial.

In passing, we caution that the responsibility of making certain that only the proper exhibits go to the jury room rests squarely upon the shoulders of the trial judge. With the disappearance of court reporters in this state, this vigilance must be heightened. The trial judge may ask the lawyers to assist, but ultimately that task belongs solely to the trial judge.

### Cumulative Error

Lastly, Mayse argues that her conviction should be reversed on the basis of cumulative error. Under this limited doctrine, we will reverse only when the "individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky.2010). In the case at bar, "there was insufficient harmless error to create a cumulative effect which would mandate reversal for a new trial." *Tamme v. Commonwealth*, 973 S.W.2d 13, 40 (Ky.1998). Further, the likelihood of prej-

udice that may have resulted from error was cured by admonitions.

### Conclusion

For the foregoing reasons, the judgment of the Kenton Circuit Court is hereby affirmed.

All sitting. All concur.