# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 19, 2015
NOT TO BE PUBLISHED

**Supreme Court of Kentucky**

2013-SC-000695-MR

JOHN GLENN RAY                              APPELLANT

ON APPEAL FROM MUHLENBERG CIRCUIT COURT

V.               HONORABLE BRIAN WIGGINS, JUDGE

NO. 13-CR-00194

COMMONWEALTH OF KENTUCKY               APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

On July 2, 2013, Connie Edwards, a pharmacy manager of the Central City Walmart in Muhlenberg County, was working inside the store when she observed Appellant, John Glenn Ray, coming toward her with a shopping cart containing two air conditioners. When he was approximately fifteen feet from the exit, Ray stopped and made eye contact with Ms. Edwards. He immediately turned around and retreated back into the store with the cart. Edwards was suspicious because it appeared that Ray did not pay for the appliances at the cash register area before proceeding to the exit.

Because of Ray's suspicious behavior, Ms. Edwards radioed Tonya Beadnall, the store's asset protection manager. Ms. Beadnall promptly arrived at Edwards' location where she was briefed. Edwards identified Ray who was still in the store at this time. With this information, Beadnall kept Ray in her line of sight as he walked throughout the store. Ms. Beadnall testified that

during this period, she observed Ray walking toward an exit with the air conditioners in his cart. He passed the check out station and made no attempt to pay for the units at any of the cash registers. When Ray reached the vestibule, the area between the two sets of doors where patrons enter and exit the store, Ray forcibly opened a set of automatic doors. He did so by pushing the cart into the doors, thereby triggering an emergency mechanism. The doors did not automatically engage because Ray attempted to exit through the entrance. This prompted Ms. Beadnall to say "excuse me sir." Ray said nothing in response. However, Beadnall testified that Ray made a sound when confronted, backed the cart up, and then proceeded back into the store with the cart. Ms. Beadnall continued to follow Ray throughout the store but did not confront him again. At this point, Ray discarded the cart in one of the aisles and exited the store without the cart or the air conditioners. Beadnall followed Ray outside and observed him walk away through the parking lot. She then contacted the police who arrested Ray shortly thereafter.

Ray was indicted by a Muhlenberg County grand jury for theft by unlawful taking over $500 and being a first-degree persistent felony offender ("PFO"). At trial, a Muhlenberg Circuit Court jury found Ray guilty of both charges and recommended a five-year sentence for the theft conviction, enhanced to twenty years as a result of the PFO conviction. The trial court sentenced Ray in accord with the jury's recommendation. Ray now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Three issues are raised and addressed as follows.

2

## Directed Verdict

Ray first argues that the trial court erred in denying his motion for a directed verdict of acquittal for the offense of theft by unlawful taking over $500. We will reverse the trial court's denial of a motion for directed verdict "if under the evidence as a whole, it would be *clearly unreasonable* for a jury to find guilt[.]" *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill, 660 S.W.2d 3 (Ky. 1983) (emphasis added)). When ruling on a directed verdict motion, the trial court must assume that the Commonwealth's evidence is true. Benham, 816 S.W.2d at 187. Our review is confined to the proof at trial and the statutory elements of the alleged offense.* *Lawton v. Commonwealth,* 354 S.W.3d 565, 575 (Ky. 2011).

Ray does not contest that the air conditioners constituted movable property, that the units had a value of $500 or more, or that he intended to deprive Walmart of the property. KRS 514.030(1)(a). Instead, Ray argues that the Commonwealth presented insufficient evidence to demonstrate that he *took* the air conditioners. In support, he places great emphasis on Ms. Beadnall's testimony wherein she stated that the air conditioners never crossed the store's outer threshold and that Ray turned around and walked back into the store with the units. Furthermore, the police officer's citation stated that Ray "attempted to take 2 air conditioning units . . . ." However, the citation clearly charged Ray with theft by unlawful taking. Ray also contends that the video prepared by Ms. Beadnall was labeled "attempted to push out."

3

The Commonwealth argues that, although there was no evidence that Ray actually exited the store with the air conditioners or that he made efforts to conceal them, there was sufficient evidence to demonstrate a taking. In support, the Commonwealth presents persuasive authority. Leslie W. Abramson, Kentucky Practice, *Substantive Criminal Law* § 6:24 (2013) ("[A] defendant can "take" control over another person's property without removing it from either the premises or the presence of the owner or possessor."); 50 Am.Jur2d Larceny § 21 (2014) (carrying away or removing property "may be found if there is conduct indicating that the actor's possession of the property is *adverse to that of the store.*") (emphasis added); *see also Commonwealth v. Davis*, 667 N.E.2d 1167, 1168 (Mass. App. Ct. 1996) (recognizing that "[t]he weight of authority holds that taking goods beyond the store's premises is not a necessary precondition to a conviction of larceny.") (collecting cases).

Under KRS 514.030(1)(a), actually taking an item is not required for there to be a completed theft by unlawful taking. Instead, that statute "defines the crime in terms of one who unlawfully takes property *or who unlawfully exercises control over property,*" with the intent to deprive another of that property. *Commonwealth v. Day,* 599 S.W.2d 166, 168 (Ky. 1980) (emphasis added). Taking an item is indeed a different act from exercising control over it, but the statute makes the crime complete when either occurs. *Day* makes it clear that the crime can be committed by two different types of acts. That is, so long as the conduct manifests an intent to deprive the owner of the item.

The confusion in this case comes because the trial court did not instruct on the *alternative* element of exercising control over the property with the intent to deprive. Here, the jury instruction required a determination that "[Ray] *took* two (2) air conditioners which belonged to Walmart . . . ." (Emphasis added). However, that does not affect the question of whether Ray was entitled to a directed verdict. Since a directed verdict motion must be decided before instructions are given, the trial court's denial of the directed verdict motion was correct because Ray clearly exercised control over the air conditioners with the intent to deprive Wal-Mart of them.

## Jury Instruction

Next, Ray contends that the trial court erred by failing to instruct the jury on criminal attempt to commit theft by unlawful taking. He specifically asserts that this instruction was warranted because the jury could have reasonably believed that he took a substantial step towards taking the air conditioners without actually completing the theft.

It is well-established that the trial court has a duty to instruct the jury on the whole law of the case, including any applicable lesser-included offenses. *Houston v. Commonwealth*, 975 S.W.2d 925 (Ky. 1998). However, a trial court need not instruct on a lesser-included offense that has no evidentiary foundation. *Id.* Furthermore, "[l]esser-included offense instructions are proper if the jury could consider a doubt as to the greater offense and also find guilt beyond a reasonable doubt on the lesser offense." *Parker v. Commonwealth*, 952 S.W.2d 209, 211 (Ky. 1997) (citing *Skinner v.*

5

*Commonwealth*, 864 S.W.2d 290 (Ky. 1993)). When reviewing claims of error in failing to give a jury instruction, we consider the evidence in the light most favorable to the moving party. *Thomas v. Commonwealth*, 170 S.W.3d 343, 347 (Ky. 2005). We agree with the trial court's determination and have addressed a similar issue in *York v. Commonwealth*, No. 2008-SC-000804-MR, 2010 WL 3377757 at *2 (Ky. Aug. 26, 2010).

In *York*, the defendant requested a jury instruction on attempted theft by unlawful taking. He specifically argued that, "because he did not leave the residence with the items he was carrying, a jury could have found that he had taken a substantial step in the course of the theft, but did not complete the act." *Id.* We held that the trial court properly denied the attempt instruction and adopted the following reasoning in support:

> [w]hile it is true that [the defendant] did not leave the residence with the stolen items because he was apprehended inside, he had selected the items, deposited them in a pillow case, and carried them out of the room in which he found them. Accordingly, it is illogical that a jury would find that [the defendant] intended to deprive [the victim] of the items but had not taken or exercised control over them. *Id.*

As previously discussed, the evidence in the present case demonstrates the following: 1) Ray had the merchandise in his possession; 2) he made no attempt to pay for the merchandise; 3) he walked approximately twenty-five feet beyond the check out area toward the vestibule; and 4) he forcibly opened the wrong doors before being intercepted by the store's asset protection manager. Like in *York*, it is illogical under these facts that a jury would find that Ray intended to deprive Walmart of the air conditioners, but had not taken them.

6

Accordingly, Ray was not entitled to an instruction on the lesser-included offense of attempt.

## Evidence of Prior Crimes

Lastly, Ray argues that the trial court erred in allowing the Commonwealth to introduce irrelevant, improper, and unduly prejudicial evidence of prior bad acts. The disputed evidence concerned Ray's prior thefts that occurred in Ohio County on June 27 and 28, 2013.

Prior to trial, the Commonwealth filed a notice pursuant to KRE 404 indicating that it intended to introduce certified records revealing that Ray had recently been convicted of two counts of theft by unlawful taking in Ohio County after taking a total of four air conditioners from the Beaver Dam Walmart. In addition, the Commonwealth sought to introduce video surveillance footage of the Ohio County thefts and the testimony of a store employee who witnessed the crimes. It appears that the Ohio County convictions were the only prior offenses introduced by the Commonwealth in the guilt stage of trial. However, evidence was introduced in the PFO stage of trial that Ray had been convicted of ten prior felonies as well as numerous misdemeanors, eight of which were prior shoplifting convictions.

At a pre-trial hearing, Ray moved the trial court to exclude evidence of these prior convictions from being admitted at trial. However, the trial court agreed with the Commonwealth that the evidence was probative, relevant, and not unduly prejudicial. As a result, the court admitted the Ohio County convictions, the testimony of a Beaver Dam Walmart assistant asset protection

employee, and the Beaver Dam Walmart surveillance videos and photographs.

We review a trial court's evidentiary rulings for an abuse of discretion.

*Anderson v. Commonwealth*, 231 S.W.3d 117, 120 (Ky. 2007). The rule at issue

is KRE 404(b), which provides in pertinent part as follows:

> [e]vidence of other crimes, wrongs, or acts is not admissible
> to prove the character of a person in order to show action in
> conformity therewith. It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity,
> or absence of mistake or accident . . . .

Thus, evidence of prior crimes or bad acts must be relevant "for some purpose

other than to prove the criminal disposition of the accused . . . ." *Meece v.

Commonwealth*, 348 S.W.3d 627, 662 (Ky. 2011); *Bell v. Commonwealth*, 875

S.W.2d 882, 889 (Ky. 1994) (noting that trial courts must apply KRE 404(b)

cautiously).

The evidence arising from the Ohio County convictions certainly satisfies

the intent exception to KRE 404(b). *See Hayes v. Commonwealth*, 175 S.W.3d

574 (Ky. 2005) (defendant's manufacturing methamphetamine conviction was

admissible to prove defendant's motive, intent, and plan to manufacture

methamphetamine in subsequent trial); *United States v. Harris*, 293 F.3d 970,

976 (6th Cir. 2002) (prior conviction of drug trafficking admissible to prove

intent and knowledge in trial for distribution of crack cocaine). The evidence

arising from the Ohio County conviction is also indicative of a common plan.

*State v. Brown*, 782 P.2d 1013 (Wash. 1989) (defendant's prior misdemeanor

theft convictions were admissible to demonstrate common plan and scheme);

8

*Howard v. Commonwealth*, 787 S.W.2d 264, 266 (Ky. App. 1990) (evidence that defendant sold a pound of marijuana to an undercover policeman four months after the charged offense was admissible to prove plan, scheme, or system). Furthermore, the disputed evidence was relevant, probative, and not unduly prejudicial.

KRE 401 and 402 provide a well-established minimal relevancy standard. *See also Harris v. Commonwealth*, 134 S.W.3d 603, 607 (Ky. 2004). Regarding relevancy of the contested evidence, the Ohio County thefts for which Ray was convicted occurred only several days before the theft in the present case. Furthermore, the Ohio County thefts were similar if not identical in operation to the theft in the present case, thus making the existence of Ray's intent more probable than not. Therefore, we agree with the trial court that the evidence arising from the Ohio County thefts was certainly relevant and probative. *See Davis v. Commonwealth*, 147 S.W.3d 709, 724 (Ky. 2004) (holding that evidence is probative if the jury could reasonably conclude that the other crime or act actually occurred and that the defendant was the actor); *see also Bell*, 875 S.W.2d at 890.

However, evidence that is relevant and probative may still be excluded if its probative value is substantially outweighed by its prejudicial effect. KRE 403. In *Mayse v. Commonwealth*, we stated that "all evidence demonstrating that a defendant is guilty beyond a reasonable doubt prejudices the defendant. KRE 403 requires something more." 422 S.W.3d 223, 228 (Ky. 2013). The evidence of the prior completed offense was especially probative in this case as

to intent, since Ray did not get off of the premises with the stolen items. Considering the highly probative value of the contested evidence, we cannot say that the trial court abused its discretion in admitting the evidence of Ray's prior crimes.

## Conclusion

For the foregoing reasons, we hereby affirm the judgment of the Muhlenberg Circuit Court.

Minton, C.J.; Abramson, Cunningham, Keller, Noble and Venters, JJ., sitting. All concur.

COUNSEL FOR APPELLANT:

Roy Alyette Durham, II
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

John Paul Varo
Assistant Attorney General

10