RENDERED:  DECEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1600-MR

SAMANTHA E. MAYSE                                                                       APPELLANT

|       | APPEAL FROM KENTON CIRCUIT COURT |
| ----- | -------------------------------- |
| v.    | HONORABLE GREGORY M. BARTLETT, JUDGE |
|       | ACTION NO. 09-CR-00188-004 |

COMMONWEALTH OF KENTUCKY                                                   APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Samantha Mayse appeals from an order of the Kenton

Circuit Court which denied her Kentucky Rules of Criminal Procedure (RCr) 11.42

motion in which she raised issues of ineffective assistance of trial counsel.  The

trial court denied her motion without holding a hearing.  We believe the trial court

erred in not holding a hearing as to some issues raised by Appellant; therefore, we

affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

This case has been before the Kentucky Supreme Court on direct

appeal and we will utilize that Court's recitation of the facts.

> In January of 2009, Appellant, Samantha Mayse, used a single's telephone chat line to lure Shawn Davis to a residence under the guise of a sexual encounter. What unfolded, however, was far from an erotic rendezvous. Mayse, along with Mary Hartbarger and Marion "Timmy" Parker, intended to rob Davis. The illicit scheme came to fruition when Davis arrived at the apartment and Mayse and her confederates attacked Davis in the upstairs bedroom. A fierce melee ensued. Fearing for his life and naked, Davis unsuccessfully attempted to jump out of a window to escape his aggressors. There was evidence that Mayse helped to restrain Davis and that she also struck him. Patrick Cooke then entered the scene and held Davis down while Parker beat him. Parker took a porcelain toilet tank lid that had been hidden in the closet and beat Davis in the head with such severity that the lid shattered. Offering no reprieve, Parker then bound Davis's hands with cable and strangled him to death. Sometime during the assault, Parker removed twenty dollars from Davis's wallet.

> After wrapping Davis's body in a plastic shower curtain, Cooke and Parker carried the body outside and placed it in a large trash can which they then positioned into the bed of the victim's truck. Hartbarger held the hallway door open so that the children who were also living in the apartment would not witness the grizzly [sic] deed. Parker, Cooke, and Hartbarger then drove to an isolated location in a neighboring county. There,

underneath a bridge and surrounded by winter's frigid embrace, Parker set fire to the victim's body.

Mayse was charged with one count of complicity to murder[1] and one count of first-degree complicity to robbery.[2] A Kenton Circuit Court jury found Mayse guilty on both counts and recommended a sentence of life without the possibility of parole for a minimum of twenty-five years on the murder count and twenty years on the robbery count. The two sentences were recommended to run concurrently. On December 7, 2011, Mayse was sentenced in accordance with the jury's recommendation.

*Mayse v. Commonwealth*, 422 S.W.3d 223, 225 (Ky. 2013), *as modified on denial of reh'g* (Mar. 20, 2014). Mayse raised multiple issues in her direct appeal; however, the Kentucky Supreme Court affirmed her conviction. We will note that Appellant claims she was a reluctant participant in this scheme and did not take part in restraining the victim.

On March 16, 2017, Appellant filed the underlying RCr 11.42 motion alleging multiple instances of ineffective assistance of counsel. On January 2, 2018, the Commonwealth filed its response. On October 1, 2019, the trial court entered an order denying the motion without holding a hearing. The court held that all of the issues raised by Appellant were strategic decisions made by her trial counsel and that she suffered no prejudice. This appeal followed.

---

[1] Kentucky Revised Statutes (KRS) 502.020 (complicity) and KRS 507.020 (murder).

[2] KRS 515.020 (first-degree robbery).

## ANALYSIS

To prevail on a claim of ineffective assistance of counsel, Appellant must show two things:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.*

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Id.* at 691-92, 104 S.Ct. at 2066-67 (citations omitted). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. at 2067. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

-4-

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Additionally, "a hearing is required only if there is an issue of fact which cannot be determined on the face of the record." *Stanford v. Commonwealth*, 854 S.W.2d 742, 743-44 (Ky. 1993).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66 (citations omitted).

"Appellant is not guaranteed errorless counsel or counsel that can be judged ineffective only by hindsight, but rather counsel rendering reasonably effective

-5-

assistance at the time of trial." *Parrish v. Commonwealth*, 272 S.W.3d 161, 168 (Ky. 2008) (citations omitted).

> Where the trial court does not hold an evidentiary hearing on an RCr 11.42 motion, appellate review is limited to "whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." An evidentiary hearing is only required "if there is a material issue of fact that cannot be conclusively resolved, *i.e.*, conclusively proved or disproved, by an examination of the record."

*Haley v. Commonwealth*, 586 S.W.3d 744, 750 (Ky. App. 2019) (citations omitted).

Appellant's first argument on appeal is that her trial counsel was ineffective when he threatened and coerced her not to testify at trial. Appellant alleges that she wanted to testify at trial in order to explain to the jury her lack of culpability in the death of the victim, that she was shocked at what was occurring, and that she was scared for her own safety. Appellant alleges that once trial got underway, her trial counsel, Harry Hellings, informed her that she could not testify. Appellant also alleges that Mr. Hellings stated that if she attempted to testify, he would quit and walk out of the courtroom. Appellant claims that this threat forced her to give up her right to testify and that counsel was ineffective for not allowing her to testify.

-6-

We agree in part with the trial court as to this issue. Whether or not a defendant is to testify at trial can be a sound strategic decision that should not be reversed under RCr 11.42. *See Brown v. Commonwealth*, 253 S.W.3d 490 (Ky. 2008). In this case, however, Appellant alleges she wanted to testify, but was coerced into not testifying. If true, this would seem to be a substantial violation of her rights. A defendant's right to testify at trial is a personal and constitutional right only to be knowingly and intelligently waived. *Quarels v. Commonwealth*, 142 S.W.3d 73, 78 (Ky. 2004). There is nothing in the record to dispute her allegation; therefore, a hearing is required. The court needs to discover what conversations, if any, were had about Appellant testifying at trial.

Appellant's second argument is that her trial counsel was ineffective for not presenting evidence regarding statements made by Mr. Parker regarding his guilt and Appellant's lack of culpability. Mr. Parker was subpoenaed to testify at trial; however, he invoked his Fifth Amendment right not to testify. Appellant argues that trial counsel should have introduced into evidence his prior statements to the police. She claims these statements would have shown how he was the mastermind of the criminal situation and she had little culpability. She also claims that had the jury heard Mr. Parker's statements, it might have led to a conviction for a lesser offense or the jury might not have recommended such a lengthy sentence.

Again, there is no evidence in the record to refute Appellant's allegations. We do not know why trial counsel did not try and introduce Mr. Parker's prior statements into evidence. While there was ample evidence to convict Appellant and his statements do not irrefutably exonerate her, his statements could have theoretically helped her in the sentencing phase if it was shown she was a reluctant participant. The trial court must have an evidentiary hearing on this issue.

Appellant's third issue on appeal is that trial counsel failed to introduce a letter from Mr. Parker into evidence. Prior to trial, Appellant provided to her counsel a handwritten letter she received from Mr. Parker. Before giving trial counsel the letter, she made a copy of the letter by hand. This copy was later confiscated by corrections officers and turned over to the Commonwealth. At trial, the Commonwealth introduced the copy of the letter into evidence. Appellant claims the Commonwealth did this to show that Appellant was trying to manufacture evidence in her favor. Trial counsel did not introduce into evidence the original letter. Appellant argues this was an egregious error because it left the jury with the impression that she was fabricating evidence.

We do not believe this issue merits a hearing. The letter was read into the record by a witness for the Commonwealth. Neither the witness nor the Commonwealth made comments on the letter once it was read into the record and

the witness was not questioned about it. In fact, after reviewing the trial recording, this Court is unsure what the Commonwealth's intention was in introducing the letter. The Commonwealth indicated it was a letter intended for Mr. Parker from Appellant, but it is not clear if the Commonwealth believed it was a letter from Appellant to Mr. Parker or, as Appellant alleges, a fabricated statement she was going to send to Mr. Parker for him to then write in his own hand. Seeing as the Commonwealth did not bring to the jury's attention that the prosecution believed Appellant was trying to manufacture evidence, we do not believe trial counsel erred when he failed to introduce into evidence the original letter.

Appellant's fourth argument on appeal is that trial counsel was ineffective when he failed to investigate and question a juror about her knowing Appellant and her mother. During *voir dire*, the potential jurors were asked if they knew Appellant. No potential juror indicated that he or she did. One of the prospective jurors who ended up on the jury, Kathy Bowling, once worked under Appellant's mother at a nursing home. Appellant alleges that during the trial, Appellant's mother informed trial counsel that she recognized Ms. Bowling, but that trial counsel did not act on the information. Appellant also alleges that Ms. Bowling most likely recognized her as well because Appellant was a frequent visitor and volunteer at the nursing home.

During the second day of trial Ms. Bowling informed the court that she recognized Appellant's mother. Under questioning, Ms. Bowling informed the court that it was Appellant's mother, and not Appellant herself, that she recognized. In addition, Ms. Bowling stated she had not seen or spoken to Appellant's mother in over ten years and that she would have no trouble remaining impartial during the trial.

> A properly qualified juror must be impartial, which former United States Supreme Court Chief Justice Charles Evans Hughes described as comprising a "mental attitude of appropriate indifference . . . ." In order to determine if a juror has the appropriate degree of impartiality, "[t]he test is whether, after having heard all of the evidence, the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict."

*Paulley v. Commonwealth*, 323 S.W.3d 715, 720-21 (Ky. 2010) (footnotes and citations omitted). Here, Ms. Bowling was questioned about her relationship with Appellant's mother and indicated she would be an impartial juror. The Commonwealth argues that Ms. Bowling taking the initiative to bring this to the attention of the court indicates she took her jury duties seriously. We agree. Since Ms. Bowling was questioned about her past relationship with Appellant's mother, it is clear that not seeking to have her removed from the jury was a strategic decision by trial counsel that we will not disturb. In addition, because Ms. Bowling indicated she would remain neutral, we can see no issue of prejudice.

-10-

Seeing as this was a strategic decision by trial counsel and there was no prejudice to Appellant, there is no need for a hearing on this issue.

Appellant's fifth argument on appeal is that trial counsel was ineffective when he did not review the exhibits given to the jury during deliberations. At the conclusion of the evidence, the trial court instructed counsel to review the exhibits that were introduced at trial to be sure that only properly admitted exhibits were sent with the jury during deliberations. Trial counsel did not do this. Two exhibits which were not admitted into evidence ended up going with the jury into deliberations. Appellant claims that allowing the jury to review these improper exhibits constituted ineffective assistance of counsel. We disagree.

This issue was litigated on direct appeal before the Kentucky Supreme Court and we agree with the Court that these exhibits did not affect the jury's deliberations; therefore, there was no prejudice. We will quote from the Supreme Court's opinion to help explain our rationale.

> Unfortunately, two proffered defense exhibits not properly admitted as jury exhibits were inadvertently placed with the evidence to be reviewed by the jury during deliberations. Specifically, proffered Defense Exhibit # 3 (Transcript of Parker's Confession) and proffered Defense Exhibit # 4 (Parker's Plea Agreement) were given to the jury, who then briefly reviewed and discussed Exhibit # 3 only. Realizing that Exhibit # 3 and the information contained therein had not been presented at trial, the jurors requested instructions from the trial judge in order to determine whether they were to consider the exhibit. The judge assembled the jury and

-11-

counsel in the courtroom, questioned the jury about the extent to which they had viewed and discussed both proffered exhibits, and then strongly admonished the jury to disregard both.

…

The record reflects that Defense Exhibit # 4 (Parker's Plea Agreement) was never reviewed by the jury. Further, the amount of time the jury had access to the exhibits was brief. In fact, the record reflects that only one juror actually reviewed Exhibit # 3. Considering that the disputed exhibit totals 173 typed pages, we believe the juror's review was merely cursory. There is no evidence that the improperly admitted exhibits affected the jury's deliberations.

The trial court's decision is further reinforced because the exhibits inadvertently given to the jury were defense exhibits. There is obvious irony in Mayse's argument now on appeal. Exhibit # 3 contained the very information that Mayse was attempting to get to the jury through the live testimony of Parker. When the trial court made the right decision in allowing Parker to opt out as a witness, Mayse submitted for us to consider all the exculpatory matters in the confession to which Parker would have testified. Mayse asserted to the trial court, and even to this Court, on another issue all of the exculpatory content of Parker's confession by citing numerous segments from the confession in support of an accompanying argument. Mayse now argues that for the jury to have seen this evidence, even though in a cursory glance, is reversible error. Mayse cannot have it both ways. Mayse argued at trial that proffered Defense Exhibit # 3 contained exculpatory evidence that should have been presented to the jury. On appeal, although the duality of Parker's entire confession may appear problematic at first blush, it would be misleading and contradictory not to acknowledge that Mayse actually

-12-

> wanted much of Parker's confession to be heard by the
> jury.

*Mayse*, 422 S.W.3d at 229-30 (citation omitted).

We adopt this reasoning as our own. One of the improper exhibits was never examined by the jury and the other was only examined briefly. In addition, the trial court strongly admonished the jury to disregard these two exhibits. "The trial court's admonition put this issue to rest. A jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) (citation omitted). If there was no prejudice to Appellant's case, then there can be no ineffective assistance of counsel; therefore, this issue does not require a hearing.

Appellant's sixth and final argument on appeal is that trial counsel was ineffective when he elicited inadmissible evidence from one of Appellant's co-defendants. This issue was also addressed by the Supreme Court and we will cite from that opinion.

> The Commonwealth called Patrick Cooke to testify in its case-in-chief. Cooke was indicted under the same charges as Mayse, along with an additional charge of tampering with evidence. He had previously entered into a plea agreement with the Commonwealth requiring him to testify truthfully at Mayse's trial. Mayse raises no issue with the Commonwealth's direct examination of Cooke because the Commonwealth never used the term "plea." On cross-examination, however, Mayse's attorney questioned Cooke about the "agreement" he had with the Commonwealth in which his penalty for murder

-13-

> would be reduced to five years if he testified truthfully. On re-direct, the Commonwealth elicited Cooke's clarification that his agreement with the Commonwealth also included a charge of first-degree robbery, for which he received an additional penalty of fifteen years. The Commonwealth's Attorney specifically asked, "Was there another charge you pled guilty to?" Cooke replied in the affirmative.

*Mayse*, 422 S.W.3d at 227.

Citing *Parido v. Commonwealth*, 547 S.W.2d 125 (Ky. 1977), Appellant argues it was error for trial counsel to elicit the testimony regarding Cooke's plea agreement. As it pertains to this case, we disagree. Eliciting testimony about another co-conspirator's plea agreement is erroneous and substantially prejudicial when it is used as evidence of guilt of the co-conspirator now on trial. *Id.* at 126-27; *Mayse*, 422 S.W.3d at 226. Here, trial counsel was asking Mr. Cooke about his plea agreement in order to impeach his credibility, and this is proper. *Mayse*, 422 S.W.3d at 227. Furthermore, the trial court "admonished the jury not to consider Cooke's agreement with the Commonwealth as to any charges against Mayse." *Id.* Trial counsel made no error here and there is no need for a hearing as to this issue.

## CONCLUSION

Based on the foregoing, we affirm in part, reverse in part, and remand for a hearing. On remand, the trial court should hold a hearing regarding Appellant's allegation of not being allowed to testify and Appellant's argument

-14-

that trial counsel should have introduced into evidence Mr. Parker's statement to the police.

ALL CONCUR.


BRIEF FOR APPELLANT:

Michael L. Goodwin
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky