# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 20, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2018-SC-000574-MR

FINAL

DATE 3/12/20
*a Hutcheson*

DAMONDRE WILLIAMS                                APPELLANT

V.
ON APPEAL FROM KENTON CIRCUIT COURT
HONORABLE GREGORY M. BARTLETT, JUDGE
NO. 17-CR-00940

COMMONWEALTH OF KENTUCKY                     APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Damondre Williams ("Williams"), as a matter of right pursuant to § 110 of the Kentucky Constitution, appeals his convictions of one count of first-degree manslaughter and one count of attempted murder. Williams was sentenced to thirty-five years' imprisonment. For the reasons set forth herein, we affirm the judgment of the Kenton Circuit Court.

### I.   BACKGROUND

On August 1, 2017, Marcus Broadus ("Broadus"), one of the victims, went to East 13th Street in Covington, Kentucky. Broadus was accompanied by Lavonta Chaney ("Chaney"), who had a gun on his person. Broadus and Chaney walked up to the 300 block around 7:30 p.m. and saw a group of people hanging out. Among the group was Damondre Williams. Testimony revealed that Broadus and Williams had had a disagreement in the past. Right after Broadus arrived at 7:27 p.m., he attempted to call his son, Antonio Bandy

("Bandy"). When Bandy did not answer, Broadus texted Bandy to "Get to 13th ASAP." Then Broadus called Wakeem Pouncey ("Pouncey") but also got no answer. Broadus proceeded to send a text to Pouncey and told him to get to "get his ass down there" as well.

Bandy and Pouncey arrived shortly after Broadus' texts. Pouncey stopped the car in the middle of the street and got out leaving the door of the vehicle open. Pouncey brandished a firearm as he exited the vehicle. Bandy exited the passenger side then approached his father, Broadus, and asked what was wrong. Broadus told Bandy that Williams was there, and that Williams owed Broadus money.

At this point, Broadus and Williams had a conversation about Williams owing him money. The two began yelling, however, Broadus testified he did not threaten Williams. Williams testified that during the argument he claimed he did not owe Broadus any money, at which point Broadus threw a bottle he had in his hand and gestured as if he had a gun. Williams testified he had known Broadus to carry a gun, and he believed Broadus had a gun on his person. However, Broadus did not have a gun on him that day.

The dispute escalated, and Broadus testified he told Pouncey to put his gun down. Williams testified that Broadus told Pouncey to give the gun to Bandy, and upon receiving the gun Bandy cocked the weapon, a 9 mm Baretta with an extended clip, and put it in his waistband. At some point Bandy turned his back to Williams, and Broadus testified that he saw Williams go up behind Bandy and shoot him in the back of the head. Williams then chased

2

Broadus and shot him five times in the right shoulder, right arm, left shoulder and then stood over Broadus and shot him a final time in the face.

Williams fled the scene after the shooting. Officer John Denny ("Ofc. Denny"), Covington Police, was dispatched to East 13th Street where he found Broadus lying in the middle of 13th Street with multiple gunshot wounds. Ofc. Denny started first aid on Broadus and put a tourniquet around Broadus' right arm until the ambulance arrived. Ofc. Denny also saw Bandy, unresponsive, between two residences on East 13th Street with a gunshot wound to his head. Ofc. Denny testified that upon investigating the scene he discovered a gun in Bandy's waistband, however he testified it was not apparent or visible because it was covered by Bandy's shirt. Bandy's cause of death was the single gunshot wound to the head.

Upon Broadus arrival at the emergency room, Dr. Jason Schrager was the initial tending physician. Broadus had multiple gunshot wounds to his face and upper extremities. Dr. Schrager put in a breathing tube to protect Broadus' airway. Dr. Schrager's main concern was to protect Broadus' airway and control the hemorrhaging. Dr. Schrager testified that Broadus' gunshot wounds would have been fatal without treatment.

Covington Police recovered two different videos of the actual shooting. Captain Brian Valenti recovered security video from cameras located at 339 East 13th Street that were directed at the area of the shooting. Officer David Hoyle retrieved additional video footage of the shooting from a surveillance

3

camera maintained by the FBI. Still shots and video clips were introduced into evidence and viewed by the jury.

Detective Eric Higgins interviewed Williams at the Cincinnati Police Homicide Unit. Williams denied that he was in Covington on the day of the shooting. Detective Higgins told him he knew Williams was there and Williams still denied being there and being involved in the shooting. However, Williams eventually admitted he was present and that he had shot Broadus and Bandy.

Williams was convicted on one count of first-degree manslaughter and one count of attempted murder. The judge followed the jury's sentencing recommendation of twenty years on manslaughter first-degree and fifteen years on attempted murder, to run consecutively for a total of thirty-five years' imprisonment.

## II.   ANALYSIS

## A. THE TRIAL COURT PROPERLY DENIED THE REQUEST TO INSTRUCT THE JURY AS TO "NO DUTY TO RETREAT" AND EXTREME EMOTIONAL DISTURBANCE

Williams argues that the trial court abused its discretion in failing to instruct the jury on "no duty to retreat" and extreme emotional disturbance. The issue is preserved by Williams' specific requests for inclusion of instructions on "no duty to retreat" and extreme emotional disturbance.

"When the question is whether a trial court erred by: (1) giving an instruction that was not supported by the evidence; or (2) not giving an instruction that was required by the evidence; the appropriate standard for

4

appellate review is whether the trial court abused its discretion."[1] We recognize that the trial court's discretion arises from their "superior view" of the evidence and they are situated to more accurately assess nuances.[2] "[I]n evaluating the refusal to give an instruction we must ask ourselves, construing the evidence favorably to the proponent of the instruction, whether the evidence would permit a reasonable juror to make the finding the instruction authorizes."[3]

## a. WILLIAMS WAS NOT ENTITLED TO A "NO DUTY TO RETREAT" INSTRUCTION

Williams contends that the trial court abused its discretion by refusing to give a "no duty to retreat" instruction to the jury.

Pursuant to Kentucky Revised Statutes (KRS) 503.055(5):

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a felony involving the use of force.

In *Commonwealth v. Hasch,* this Court acknowledged the distinct standards of the statutory justification of self-defense and "no duty to retreat."[4] The Court held that self-defense is based on the subjective standard, that force

---

[1] *Sargent v. Shaffer,* 467 S.W.3d 198, 203 (Ky. 2015).

[2] *Id.*

[3] *Springfield v. Commonwealth,* 410 S.W.3d 589, 594 (Ky. 2013).

[4] 421 S.W.3d 349, 362 (Ky. 2013).

is justifiable if the defendant, correctly or incorrectly, believes force is necessary.[5] In contrast, the "no duty to retreat" statute is based on an objective standard, in determining when a defendant has the right to stand his ground and meet "force with force."[6]

Furthermore, the *Hasch* Court explicitly stated:

> [I]n light of the enactment of KRS 503.055 and KRS 503.050(4), **we now agree that when presented with circumstances in which the provisions of those statutes are applicable**, and upon request of one of the parties, the trial court must include among the jury instructions, a "no duty to retreat" instruction[.][7]

However, in this case the trial court refused to instruct the jury on "no duty to retreat" because there was insufficient evidence presented to show Williams was attacked. There is no duty to instruct the jury on a theory unsupported by the facts of the case.[8]

In the present case, the trial court's decision was fully supported by the evidence of the case. Williams testified that he came up behind Antonio Bandy and shot him in the back of the head when Bandy was turned away from Williams. Broadus testified that before things escalated, he requested Pouncey to put his gun away. Williams somewhat corroborated this, by testifying that Broadus requested Pouncey give his gun to Bandy. Williams admitted that upon receiving the gun, Bandy tucked it in his waistband. Williams further

---

[5] *Id.*

[6] *Id.*

[7] *Id.* at 364. (emphasis added).

[8] *Payne v. Commonwealth*, 656 S.W.2d 719, 721 (Ky. 1983).

testified that after shooting Bandy he chased down Broadus, who was unarmed, and shot him multiple times until he fell to the ground. And rather than end the assault on Broadus after he had fallen, Williams proceeded to stand over Broadus and shoot him in the face. The evidence presented at trial does not establish Williams was attacked, and it unquestionably does not establish Williams' right to stand his ground pursuant to KRS 503.055(5).

Thus, as Williams' own testimony clearly establishes that he was not entitled to a "no duty to retreat" instruction, the trial court did not abuse its discretion in refusing to instruct the jury as to "no duty to retreat."

## b. THE EVIDENCE DID NOT SUPPORT AN INSTRUCTION ON EXTREME EMOTIONAL DISTURBANCE

Williams argues that there was adequate provocation to establish Williams suffered from Extreme Emotional Disturbance ("EED") at the time of the shooting. In contrast to the "no duty to retreat" defense, the reasonableness of Williams' EED claim is subjective and based upon the circumstances as Williams believed them to be.

Williams claims that he had been the victim of a robbery a year prior, at which time he was shot. Williams claimed that his June 2016 shooting was highly traumatic, resulting in him acting uncontrollably. Williams' testimony at trial intimated that Broadus was involved in the first shooting and robbery. However, Williams testified that the robbery was committed by two males, and that he was unsure of any detail about their appearance, including ethnicity, because it was dark when the events occurred.

7

Extreme emotional disturbance has been defined as:

> A temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes.[9]

Williams' testimony showed that immediately before the shooting Williams heard Broadus tell Bandy to get his money. Upon hearing Broadus' comment, Williams made the conscious decision to shoot Bandy in the back of the head. Williams' testimony showed he was not acting under EED, but rather made the decision to shoot before he believed he would be shot. The trial determined that the evidence in its entirety did not warrant an instruction for EED.

An EED defense requires "adequate provocation" for the action – or a "triggering event" that caused the action.[10] We refuse to hold that an unrelated event (Williams having been shot by unidentified shooters) from over a year prior constitutes a "triggering event" here for EED or could be included in a "cumulative effect of this series of events."[11] Also, from our review of the record, there was no abuse of discretion by the trial court in its finding that the evidence was insufficient to form a basis for an EED instruction.

---

[9] *McClellan v. Commonwealth*, 715 S.W.2d 464, 468-69 (Ky. 1986).

[10] *Holland v. Commonwealth*, 114 S.W.3d 792, 807 (Ky. 2003).

[11] *Id.* at 808.

## B. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN INSTRUCTING THE JURY ON FIRST-DEGREE MANSLAUGHTER

Williams argues that the trial court abused its discretion by giving the jury an instruction as to first-degree manslaughter regarding his shooting of Bandy. Williams claims that a jury could not reasonably doubt his intent to cause death to Bandy when he shot him in the head and that it was not reasonable for a juror to believe he only intended to cause serious physical injury under the circumstances.

The trial court instruction on first degree manslaughter was as follows:

> If you do not find the Defendant guilty of Murder under Instruction No. 5, you will find the Defendant, DAMONDRE WILLIAMS, guilty of First Degree Manslaughter under this Instruction and under the Indictment if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in Kenton County on or about August 1, 2017, and before the finding of the Indictment herein, the Defendant killed Antonio Bandy by shooting him with a deadly weapon;
> AND
> B. The Defendant did not intend to kill Antonio Bandy but did intend to cause serious physical injury;
> AND
> C. That in so doing, the Defendant was not privileged to act in self-protection as explained in Instruction No. 9.

On July 19, 2018, the second day of trial, Williams proposed instructions which included Murder, Second-Degree Manslaughter, Reckless Homicide and Murder under Extreme Emotional Disturbance. Williams proposed instructions did not include an instruction for first-degree manslaughter.

9

However, during a conference without the jury present, on the morning of July 20, 2018, the third day of trial, Williams' counsel asked the judge if first-degree manslaughter would be read as a "stand alone instruction." The trial judge stated in the affirmative and went through the proposed instruction for first-degree manslaughter. Defense counsel made no objections. After reviewing all the instructions to be given with Count I, Williams' counsel stated that he thought under Count I it should be "Murder, Man I, Man II, Reckless." The trial judge proceeded to go through each of the instructions, including "Instruction VI" first-degree manslaughter, again without objection by defense counsel. Williams counsel's only response was that they agreed that the instructions for Count I as the judge had just reviewed them were correct as counsel had them. When the conference had ended, but before the jury entered, the judge asked, "Anything you would like to put on the record regarding instructions?" Williams counsel only replied, "We stand on our requested instructions." As to the death of Bandy, the trial court instructed the jury on murder, manslaughter, and reckless homicide with self-defense and imperfect self-defense instructions.

Pursuant to Kentucky Rules of Criminal Procedure (RCr) 9.54(2):

> No party may assign as error the giving or failure to give an instruction unless the party's position has been fairly and adequately presented by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, **stating specifically the matter to which the party objects**. (emphasis added).

10

In *Martin v. Commonwealth*, this Court held that under RCr 9.54(2) the burden is on the parties to make their instructional preferences known.[12] Specifically, this Court stated:

> **RCr 9.54 imposes upon the party the duty to inform the trial court of its preferences regarding "the giving or failure to give" a specific jury instruction.** Therefore, when the allegation of instructional error is that a particular instruction should have been given but was not or that it should not have been given but was given, RCr operates as a bar to appellate review unless the issue was fairly and adequately presented to the trial court for its initial consideration.[13]

Because the issue is that the first-degree manslaughter instruction should not have been given, but defense counsel failed to make specific objection, appellate review is thus barred pursuant to RCr 9.54 and *Martin*. We therefore decline to review the matter further.

## C. THE COMMONWEALTH'S OPENING STATEMENT DID NOT WARRANT A MISTRIAL

Williams argues that the Commonwealth's opening statement which commented on Williams not being blocked was in error and that a mistrial should have been granted. The issue is preserved as Williams made a timely objection and moved for a mistrial.

During opening statements, the Commonwealth made the following comment, "He (Williams) was not trapped. In fact, no one in that group of men

---

[12] 409 S.W.3d 340, 346 (Ky. 2013).

[13] *Id.* (emphasis added).

in the 300 block of East 13th Street was further west than Damondre Williams. He had a choice. He could have walked away." Defense counsel objected, and a bench conference occurred in which Williams argued against the statement, pursuant to *Commonwealth v. Hasch*, 421 S.W.3d 349 (Ky. 2013). Williams argued that the Commonwealth may not encourage the jury to draw inference that, just because an avenue was available for Williams, that his use of force in self-defense was unnecessary.[14] During the bench conference the Commonwealth argued that their point was not about Williams' avenue to leave, but rather that Williams chose to advance his ground. Following the bench conference, the Commonwealth continued their opening statement and clarified the issue surrounding an available avenue to retreat. At the close of opening statements defense counsel made a motion for a mistrial, which was overruled. Defense counsel then asked that the jury be admonished. The trial court did admonish the jury.

When reviewing a trial judge's decision on a motion for a mistrial we review for abuse of discretion. "A trial court has discretion in deciding whether to declare a mistrial, and its decision should not be disturbed absent an abuse of discretion."[15] In reviewing an argument of prosecutorial misconduct we must first decide "if the misconduct is flagrant or if each of the following three conditions is satisfied: (1) proof of defendant's guilt is not overwhelming; (2)

---

[14] *Id.* at 363.

[15] *Clay v. Commonwealth*, 867 S.W.2d 200, 204 (Ky. App. 1993).

12

defense counsel objected; and (3) the trial court failed to cure the error with a sufficient admonishment to the jury."[16]

"A mistrial is appropriate only where the record reveals 'a manifest necessity for such an action or an urgent or real necessity.'"[17]  Here, there was no manifest necessity for a mistrial as the judge properly admonished the jury, and the Commonwealth clarified their statement.  This Court has previously held that juries are presumed to follow a trial court's admonition.[18]  Further, Williams was able to testify on direct examination that he could not walk away as he feared he would be shot in the back.  Therefore, we determine the trial court did not abuse its discretion denying a motion for mistrial.

This Court may reverse only if the misconduct is deemed so improper, prejudicial, and egregious that it undermined the entirety of the proceedings.[19] After in-depth review we cannot say that the prosecutor's statement went beyond advocacy into flagrant misconduct that would prejudice the outcome. The trial court properly admonished the jury following defense counsel's objection, and the evidence against Mr. Williams was overwhelming.

---

[16] *Bowling v. Commonwealth,* 553 S.W.3d 231, 242 (Ky. 2018).

[17] *Clay,* 867 S.W.2d at 204 (quoting *Skaggs v. Commonwealth,* 694 S.W.2d 672, 678 (Ky. 1985)).

[18] *Martin v. Commonwealth,* 170 S.W.3d 374, 381 (Ky. 2005).

[19] *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky. 2006).

## D. THE TRIAL COURT PROPERLY DENIED WILLIAMS' MOTION TO EXCLUDE DR. SCHRAGER'S TESTIMONY

Williams argues that Dr. Jason Schrager's testimony should have been excluded due to a discovery violation. The issue is preserved for appellate review.

On June 18, 2018, one month before trial, the Commonwealth gave notice that they intended to call two expert witnesses, the first being the coroner and the second being Dr. Schrager. This notice specifically stated that Dr. Schrager would "testify in conformity with the medical records, which were previously tendered to the Defendant." Despite repeated requests by the defense counsel for discovery, on July 9, 2018, the defense informed the court that they had not received any medical records as the notice had stated. The Commonwealth informed the court that they were not in possession of Dr. Schrager's medical records, and that they were not sure why the notice stated that they had sent them to defense counsel. The Commonwealth said it would have the report summary of Dr. Schrager to the defense by Friday, July 13, 2018.

On Thursday, July 12, 2018, the defense performed an open file review and discovered none of Dr. Schrager's medical records were in the file. The prosecutor met with Dr. Schrager on Friday but was unable to provide the summary report to defense by the court ordered discovery deadline. Instead, the Commonwealth sent the summary of Dr. Schrager's findings the next day. The Commonwealth argued that the defense received the summary less than twenty-four hours after it was due, and that defense counsel still had several

days to review and prepare prior to trial. Dr. Schrager's testimony was important as his opinion that the gunshot wounds suffered by Broadus were potentially fatal without medical treatment and were proof to establish "serious physical injury" on the charge of first-degree assault.

On Monday, July 16, 2018, the day before the trial was to commence, the parties appeared in open court and Williams moved to exclude Dr. Schrager's testimony at trial on grounds that the Commonwealth failed to meet the discovery deadline for providing a summary of Dr. Schrager's report regarding the treatment of Broadus on July 13, 2018. The Commonwealth argued that there was no prejudice because Williams knew about Broadus' injuries and the existence of Dr. Schrager. When the judge asked defense if they knew what Dr. Schrager would say, defense counsel was unresponsive only claiming that it was a matter of principle. The court offered defense counsel a continuance, but the defense declined. The court overruled Williams' motion to exclude Dr. Schrager's testimony and determined that the court would limit the extent to which the doctor could describe the injuries.

On Tuesday, July 17, 2018, the issue of the discovery violation was again raised as defense counsel informed the trial court that the Commonwealth had only turned over the 700 pages of medical records the day before. The Commonwealth maintained that it was unaware that they had the records in their possession until they discovered the records on an employee's hard drive. The court again offered Williams a continuance so that counsel could review the summary and all of Broadus' medical records, but again defense counsel

15

declined the continuance, stating it would be a punishment to Williams if the trial were continued.

During trial, Dr. Schrager testified that Broadus arrived at the hospital with multiple gunshot wounds to his arms, body, and face. Broadus had a tourniquet around his right arm. Dr. Schrager was worried that Broadus could get blood in his airway, so he was intubated. Broadus was in the ICU for nine days following the shooting. Dr. Schrager testified that it was his expert opinion that the gunshot wounds would have proved fatal to Broadus absent medical treatment. The defense chose not to cross-examine Dr. Schrager.

In matters dealing with discovery, pursuant to RCr 7.24(11) it is determined that:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may direct such party to permit the discovery or inspection of materials not previously disclosed, **grant a continuance**, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as may be just under the circumstances. (emphasis added).

This Court has addressed similar matters dealing with discovery, determining that it is within the discretion of the trial court to permit the discovery or inspection of materials not previously disclosed, including granting a continuance.[20] This Court found in *Berry*, a case analogous to the case before us, that the trial judge had offered the defense a continuance that was

---

[20] *Berry v. Commonwealth*, 782 S.W.2d 625, 627 (Ky. 1990).

16

declined because the defendant did not want to prolong his time in jail awaiting discovery.[21] Ultimately, the Court held that upon rejecting the offered continuance the party cannot then complain about its decision.[22]

In the present case, the Commonwealth was less than twenty-four hours late in providing the summary of Dr. Schrager's report regarding the specific medical intervention he performed on Broadus. The Commonwealth argues that defense counsel was well aware of Broadus' injuries, that Broadus was shot multiple times including in the face and that Dr. Schrager had treated Broadus. Here, the trial court offered a continuance on multiple occasions to defense counsel so they could review the summary and counsel declined this remedy. Williams, after rejecting the continuance, cannot complain about the decision that was made. Therefore, the trial judge did not err in allowing Dr. Schrager's testimony.

## E. THE TRIAL COURT PROPERLY LIMITED WILLIAMS' ATTEMPTS TO INTRODUCE INADMISSIBLE EVIDENCE

We review a trial court's evidentiary ruling for an abuse of discretion.[23] "Under this standard, a trial court's evidentiary ruling will not be disturbed unless its ruling was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[24] Additionally, if an evidentiary error was committed,

---

[21] *Id.* at 628.

[22] *Id.*

[23] *Walker v. Commonwealth*, 288 S.W.3d 729, 739 (Ky. 2009).

[24] *Id.*

17

harmless error may have occurred if "with fair assurance that the judgment was not substantially swayed by the error."[25]

Williams first argues that the trial court erred in limiting Arliss Parker's testimony as to what he heard Broadus say to Bandy right before Williams shot Bandy. Arliss Parker was present the day of the incident and was standing beside Williams prior to the shooting. During Parker's testimony defense counsel asked what Broadus and Bandy were doing immediately before the shooting occurred. Parker testified that he was standing next to Williams, who he testified was focused specifically on Bandy because he had a gun in his waistband. Parker said that Broadus and Bandy had leaned into one another and were talking loudly enough for Parker to hear. When the defense counsel attempted to ask Parker what he heard them say, the Commonwealth objected, and the trial court sustained the objection.

Williams now argues that the testimony regarding the conversation should have been admitted as nonhearsay to prove Williams so feared Broadus and Bandy that he believed it necessary to use deadly physical force in self-protection. In *Saylor v. Commonwealth*, this Court addressed an exception to when a victim's prior acts of violence, threats, and even hearsay evidence of such threats may be offered to prove defendant feared the victim.[26] The exception provides that if the defendant believed it was necessary to use deadly physical force in self-protection, **"provided that the defendant knew of such**

[25] *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009).

[26] 144 S.W.3d 812, 815 (Ky. 2004).

**acts, threats, or statements at the time of the encounter.**"[27] The evidence is offered to prove the defendant's state of mind at the time he acted in self-defense.[28]

In reviewing the trial court's decision for abuse of discretion, we hold there was no error in limiting Parker's testimony. Williams was allowed to testify as to what he heard Broadus say to Bandy just prior to the shooting. Parker's testimony could not be used to prove fear of Broadus or Bandy by Williams because Williams would have to prove his knowledge of threats or statements.[29] Parker's testimony, therefore, would have added nothing to what Williams recalled in order to establish Williams' state of mind when he acted in claimed self-defense.

Williams second argument is that the trial court erred in limiting Robert Bright's testimony that Broadus was known to carry guns. Bright was present at the time of the shooting and was standing next to Williams when Broadus initially approached Williams. Defense counsel established that Bright saw that Chaney, who arrived with Broadus, had a firearm. Defense counsel then tried to establish that Broadus was known to carry a firearm. Bright was able to answer in the affirmative, however the Commonwealth immediately objected, and the trial judge sustained the objection. The trial court would not allow the defense to establish Bright's knowledge of Broadus reputation for carrying a

---

[27] Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.20 at 112 (5th ed. 2013) (emphasis added).

[28] *Saylor*, 144 S.W.3d at 816.

[29] Lawson, *supra*, footnote 27.

19

firearm. The trial court found that Bright would have needed to communicate to Williams that he had observed Broadus carrying a firearm. The defense argued that Bright's testimony would have assisted in establishing Williams' state of mind and fear of the victim.

On appeal Williams argues that the testimony should have been admitted pursuant to Kentucky Rules of Evidence ("KRE") 406, which states,

> Evidence of habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.[30]

Defense counsel wanted Bright to testify that Broadus was known to carry a gun. After the initial objection regarding Bright's testimony was sustained, defense counsel attempted to ask Bright "When you and Damondre (Williams) were around Marcus (Broadus) did you ever see him with guns?" At that time the Commonwealth again objected, and the judge asked both counsel to approach. At the bench conference the Commonwealth stated, "This is the exact same thing." To which the defense counsel responded, "It is absolutely relevant, because it goes to Damondre's subjective belief. And any other violent or aggressive acts of the victim is admissible for the purpose of establishing that." The trial judge sustained the objection and determined that Williams would be allowed to testify to his personal knowledge of Broadus carrying a firearm or any other prior bad acts known to him.

---

[30] Kentucky Rules of Evidence 406.

20

Consequently, our review indicates that defense counsel failed to argue KRE 406 and the habit testimony avenue was not brought to the attention of the trial court. This Court has held that an appellate court is "without authority to review issues not raised in or decided by the trial court."[31] Thus, there is no basis for this Court to review the issue of habit evidence as it was not raised before the trial court.

Here, Williams was able to testify to the reputation of Broadus that he was known to carry firearms, that Broadus had shown Williams a Smith & Wesson firearm he was carrying on a separate occasion, and that Williams believed Broadus to be armed at the time of the altercation. Additionally, the jury was able to hear Bright state affirmatively that Broadus was known to carry a firearm before the Commonwealth could object. Therefore, in the context of this trial, the exclusion of Bright's testimony was not an abuse of discretion by the trial judge.

### III.   CONCLUSION

For the foregoing reasons, we affirm the Kenton Circuit Court.

All sitting. Minton, C.J.; Lambert, Nickell, VanMeter and Wright, J.J., concur. Hughes and Keller, J.J.; concur in result only.

---

[31] *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989) (citing *Matthews v. Ward*, 350 S.W.2d 500, 501 (Ky. 1961)).

21

COUNSEL FOR APPELLANT:

SHANNON RENEE DUPREE
Assistant Public Advocate


COUNSEL FOR APPELLEE:

DANIEL JAY CAMERON
Attorney General of Kentucky

COURTNEY J. HIGHTOWER
Assistant Attorney General